IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STANFORD L. BURRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-1496 |
| | ) | |
| RICHARDS PAVING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GARY W. ABER (DSB #754)
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
(302) 472-4900
Attorney for Plaintiff

DATED:  August 18, 2006

## TABLE OF CONTENTS

**Page No.**

Table of Citations                                                           3

Statement of Relevant Facts                                                  5

  Plaintiff's Background History                                   5

  Plaintiff's Application for Employment                           5

  Delaware Department of Labor Proceedings                         7

Summary of Argument                                                         10

Argument

 I. On A Motion for Summary Judgment Where There
   is a Factual Conflict, Summary Judgment is Inappropriate.      11

 II. The Defendant Has Violated the "Americans With Disabilities
   Act" By Not Hiring Stanford Burris Because of His Disability
   in Speaking.                                                 13

 III. The Defendant Refused to Hire Stanford Burris Because it
   Regarded Him as Disabled.                                    18

Conclusion                                                                  21

# TABLE OF CITATIONS

**Page No.**

Abramson v. William Patterson College of New Jersey
 260 F.3d, 265, 278 (3d Cir. 2001)   16

Anderson v. Liberty Lobby, Inc.
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510
 91 L.Ed.2d 202 (1986)   11

Arnold v. United Parcel Service, Inc.
 136 F.3d 854, 860 862 (1st Cir. 1998)   18

Barnes v. Goodyear Tire & Rubber Co.
 48 S.W.3d 698 (Tenn. 2000)   15

Bragdon v. Abbott
 524 U.S. 624, 641, 118 S.Ct. 2196
 141 L.Ed.2d 540 (1998)   15

Chipollini v. Spencer Gifts, Inc.
 814 F.2d 893, 896 (3d Cir. 1987)   11

Dudley v. Hannaford Brothers Co.
 190 F.Supp.2d 69 (D.Ma. 2002)   14

Eastman Kodak Co. v. Image Technical Services, Inc.
 504 U.S. --, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)   11

Emory v. AstraZeneca Pharmaceuticals, LP
 401 F.3d 174 (3d Cir. 2005)   15

Finch v. Hercules, Inc.,
 865 F.Supp. 1104. 117 (D.Del. 1994)   11

Fiscus v. Wal-Mart Stores, Inc.
 385 F.3d 378 (3d Cir. 2004)   15

Fuentes v. Perskie
 32 F.3d 759, 765 (3d Cir. 1994)   11, 16

Goodman v. Mead Johnson & Co.
 534 F.2d 566, 573 (3d Cir. 1976)   11

Gottesman v. J.H. Batten, Inc.

      286 F.Supp.2d, 644                                                      14

In Re: Unisys Savings Plan Litigation
      74 F.3d 420, 433 (3d Cir. 1996)                                        12

Johnson v. American Chamber of Commerce Publishers, Inc.
      108 F.3d 818 (7th Cir. 1997)                                           19

Lake v. A.K. Steel Corporation
      2006 WL 1158610 (W.D. Pa. 2006, at p. 30)                              16

McGinnis v. Alamo Community College
      207 F.3d 274 (5th Cir. 2000)                                           18

Reeves v. Sanderson Plumbing Products, Inc.
      U.S.    , 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)                       12

Sheridan v. E. I. duPont de Nemours & Co.
      100 F.3d 1061 (3d Cir. 1996)                                           12

Sutton v. United Airlines, Inc.
      527 U.S. 471, 479-80
      119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)                                14

Taylor v. Pathmark Stores, Inc.
      177 F.3d, 180, 188 (3d Cir. 1999)                                  18, 19

Turner v. Hershey Chocolate, U.S.
      440 F.3d 604 (3d Cir. 2006)                                            13

Williams v. Philadelphia Housing Authority Police Department
      380 F.3d 751, 766                                                  18, 19


**STATUTES**

42 U.S.C. §12101 et.seq.                                                  13, 18

29 C.F.R. §1630.2 (1)                                                     16, 18

29 C.F.R. §1630.2 (h)(1)                                                      18

29 C.F.R. §1630.2 (j)(i)                                                      15

29 C.F.R. §1630.2 (j)(i)(ii)                                                  16

## STATEMENT OF RELEVANT FACTS

### Plaintiff's Background and History

The plaintiff in this matter, Stanford Burris, is an experienced truck driver.  He has had a CDL license since he was twenty-one (21) (Burris 9, B-13).  He is now sixty-four (64) years of age, and has been a truck driver for the last forty (40) years (Burris 9, B-13).  His CDL license has been renewed every five (5) years (Burris 8, B-12). He last took a driving test in 2003, to be a bus driver, which he passed (Burris 9, B-13).  In the winter of 2005/2006 he applied for a job with Wally Truck Company in New Jersey, where he had to take a road test with a tractor trailer, which he passed (Burris 45, B-28).  He was also examined and took a test for DOT certification in New Jersey and passed (Burris 46, 47, B-28, 29).  He has never failed a driving test (Burris 47, B-29).

In 1991, the plaintiff had is larynx surgically removed (Burris 14, B-15).  He has tried to use an electronic voice box, but has not used it since 1991-92 (Burris 14, B-15).  As a result of his surgery, Mr. Burris has an opening in his neck (Burris 20, B-16).  When he talks there are words he cannot pronounce (Burris 20, B-16), and many employers have considered him disabled (Burris 21, B-17).  The loss of his larynx affects the quality of his speech (Burris 34, B-27).

### Plaintiff's Application for Employment

In April 2003 the plaintiff answered an ad for Richards Paving and applied for a job as a truck driver (Burris 13, B-14).  He met with a gentleman named Dave (Id.)(that individual was David Moluski)(Moluski 11, B-37).  As part of the interview process, Mr. Moluski asked Mr. Burris to bring a copy of his driving record (Moluski 11, B-37), after which he would have to

perform a driving test (Moluski 11, B-37). When Burris appeared he discussed his experience and where he had worked (Moluski 11-12, B-37-38).

After Mr. Burris was interviewed he was taken on a driving test which took him about five (5) to ten (10) miles up and down Route 141 (Burris 22-23, B-18-19). During the test he drove a Mack dump truck (Burris 23, B-19). After the test he was asked to use a CB radio, but he was not in the truck in which he took the road test (Burris 51, 54, 56, B-31, 33, 24). The test used a CB radio in another truck in the shop getting its accelerator repaired (Burris 56, B-34). The only reason he talked on the CB was because Moluski asked him to do so (Burris 58, B-35).

After taking the driving road test, Mr. Burris was told that it was successful but he still needed to bring in a copy of his driving record (Burris 54, B-33). The plaintiff went to the Department of Motor Vehicle and got a copy and delivered it the next morning (Burris 25, B-21). After he delivered the record he was told that he would not be hired because of the problems with his voice (Burris 26, B-22). Specifically, Moluski said: "I can't use you because of your voice." (Burris 30, B-24). He was further told that he could not be understood over a CB radio (Burris 32, B-25). Burris volunteered to try and use his electronic larynx but that alternative was refused by the gentleman who interviewed him, David Moluski (Burris 26-27, B-22-23). Mr. Burris asked if he could work as a laborer or any other capacity, but was not hired (Burris 33, B-26).

> "When he said he couldn't use me, couldn't hire me because of my voice, really, it really floored me, because I was feeling good; he brought me, he just crashed my world when he said he couldn't hire me because of my voice, and I realized that I really, truly, do have a problem." (Burris 49, B-30A).

### Delaware Department of Labor Proceedings

The plaintiff filed a charge of discrimination with the Department of Labor (B-8A). After an investigation the Department of Labor made a finding of "Probable Cause" and issued a decision (B-9). In its finding, the Department of Labor stated that it was an undisputed fact:

> "Respondent had an interview with charging party where the interviewer and charging party attempted to communicate using both a CB radio and cell phone in an attempt to find a reasonable accommodation to charging party's disability." (B-9).

The Department of Labor also recited as a disputed fact a claim by Richards Paving ("the respondent") as follows:

> "Respondent claims that attempts were made at the interview to communicate with charging party over the CB radio and cell phone, and where unsuccessful." (B-9).

During the investigation with Richards Paving, the Department of Labor had contacted Jeffery Thompson, the president of Richards Paving (Thompson 3, B-49), both verbally and in writing wanting to know Richard Paving's version of why Burris was not hired (Thompson 8, B-50). Initially Thompson did not provide any information to the Department of Labor (Thompson 8-9, B-50-51), but eventually he responded to a written inquiry from the Department of Labor and wrote a response (Thompson 9, B-51).

When questioned about whether or not Thompson would tell the truth in the response to the Department of Labor, he stated that he only responded on an "informal basis" (Thompson 10, B-52). Thompson stated specifically:

> "I would tell the truth. But on an informal basis, there would be a big distinction between how you are going to address an issue, whether the issue is going to be used at a future date". (Thompson 10, B-52 ).

When Thompson responded to the Delaware Department of Labor and it was questioned about whether he told the truth. Thompson stated that he wrote informally off the record as directed by

an employee of the Department of Labor (Thompson 24, B-62). Thompson admitted that when he was talking off the record he does not tell the truth and sometimes makes up things out of his imagination (Thompson 11, B-53).  He agreed that he would lie to a government agency, the State of Delaware, under some circumstances (Thompson 13, B-54), and claims that he might of lied to the Department of Labor in his informal response (Thompson 14, B-55).  Thompson then went on to claim that when he spoke to the Department of Labor, he had no knowledge of who Stanford Burris was (Thompson 15, B-56), did not know whether he was black or white, short or fat, or had any disabilities (Thompson 15-16, B-56-57).

When confronted with the Department of Labor decision Thompson agreed that the Charge of Discrimination had been filed (Thompson 17, B-58), and stated he had no reason to disagree with the finding that Burris had applied for a truck driver position with Richards Paving on April 3, 2003.  When questioned about whether during the interview Burris attempted to communicate by using both a CB radio and cell phone, as stated in the Department of Labor decision, Thompson replied he didn't know whether Burris did or did not do that (Thompson 17-18, B-58-59). However he conceded that he knew that Burris had not been hired (Thompson 18, B-59).  Thompson could not agree or disagree that the Burris was not hired because of his voice (Thompson 18-19, B-59-60). Thompson further stated he had no reason to agree or disagree with the Delaware Department of Labor finding that Richards Paving stated that Burris could not be heard over a CB radio and that was the reason he was not hired as a truck driver (Thompson 19, B-60).

Richards Paving, that is, its president, Thompson's reasons for responding to the Department of Labor in the manner that it did was to defend against the statements made by Burris and make the whole affair go away (Thompson 20, B-61).

The discovery in this matter shows, contrary to the testimony of Mr. Burris, that the gentlemen who tested Mr. Burris, David Moluski stated, under oath, that he did not test the plaintiff at any time on a CB radio or cell phone (Moluski 29, 35, B-43, 46), nor would anybody else have conducted such a test (Moluski 35, B-46).  In addition he has no recollection of talking to Mr. Burris on a cell phone (Moluski 38, B-47), although he conceded that Burris was difficult to understand when he spoke. (Moluski 38, B-47).

## SUMMARY OF ARGUMENT

This matter involves a claim by Stanford Burris, the plaintiff that he was discriminated against because of either his actual disability or a perceived disability by the defendant, Richards Paving, when he applied for a position as a truck driver.  Mr. Burris had his larynx surgically removed, and has a hole in his neck, and has difficulty in speaking and being heard.  He claims that when he applied for a job with Richards Paving, they would not hire him because he could not be understood when he talked, especially over a CB radio and/or cell phone.

During the proceedings before the Delaware Department of Labor, investigating the plaintiff's charge, the defendant admitted to the Delaware Department of Labor that they attempted to communicate with the plaintiff over a CB radio and cell phone.  However, during these proceedings, both in the defendant's answer, and in discovery, they have denied that there was any such attempt to determine if the plaintiff could communicate by CB radio or cell phone.  More astonishingly is the fact that the individual who communicated with the Delaware Department of Labor admits that in its attempt to provide a response to the Delaware Department of Labor's inquiries, was an "informal" manner, just to make "...it would go away."  (Thompson 20, B-61).  The president of Richards Paving admits that when he communicates with people in an informal manner, he would occasionally lie, and would even lie to the Delaware Department of Labor.

Accordingly, there are significant issues of fact present in this matter, with regards to the defendant's alleged non-discriminatory reason for not hiring Mr. Burris, so as to create issue of fact and pretext, which preclude the granting of summary judgment.

## ARGUMENT

I.    **ON A MOTION FOR SUMMARY JUDGMENT WHERE THERE IS A FACTUAL CONFLICT, SUMMARY JUDGMENT IS INAPPROPRIATE.**

Summary Judgment is governed by <u>Federal Rule of Civil Procedure</u>, Rule 56.

Under this rule, summary judgment may be ordered only when

> "...the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, <u>Federal Rules of Civil Procedure</u>.

The United States Supreme Court has determined that a genuine issue of fact exists "...if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The burden of proving that there is no issue of material fact remains at all times with the party moving for Summary Judgment, here the Defendant, even if that party would not have the burden of proof at trial. <u>Finch v. Hercules, Inc.</u>, 865 F.Supp. 1104, 1117 (D. Del. 1994) citing <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir.) <u>en</u> <u>banc</u>, <u>cert.</u> <u>denied</u>, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

At this stage of the proceedings the Court must examine all the evidence, including all inferences to be drawn from the underlying facts, in the light most favorable to the non-moving party.  <u>Finch</u> at 1118, citing <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976), <u>cert</u> <u>denied</u>, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).  Furthermore, if there is any dispute concerning issues of material fact, the non-moving party's version of the disputed facts, here Mr. Benjamin's must be presumed correct.  <u>Kodak Co. v. Image Technical Services, Inc.</u>, 504 U.S. - -, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).   Even where certain facts are

undisputed "...summary judgment may not be granted where there is disagreement over inferences that can be reasonably draw from those facts." In Re: Unisys Savings Plan Litigation, 74 F.3d 420, 433 (3d Cir. 1996). It remains the province of the fact finder to resolve any issues of believability and the weight of the evidence. Id., at ftn. 10. Here, the plaintiff is to receive the benefit of the doubt whenever his assertions conflict with those of the defendant and have all inferences drawn in his favor. Id., at ftn. 10.

These standards have recently been reiterated and strengthened by the Supreme Court in its holding in Reeves v. Sanderson Plumbing Products, Inc. U.S. __, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). There, it was ruled that Courts "...must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." Id. at 2110. In doing so, the Supreme Court has recognized that the Third Circuit's decision in Sheridan v. E.I. duPont de Nemours & Co., 100 F.3d 1061 (3d Cir. 1996) required evidence of pretext to be submitted to a jury, Reeves at p.2105. In Sheridan, the Third Circuit stated that it remains a jury function to determine the credibility of the proffered reasons for an employer's actions, since:

> "A jury must perform the traditional functions of assessing the weight of the evidence, the **credibility of the witnesses**, through observation of both direct testimony and examination at trial, and the strength of the inferences that can be drawn from the elements of a prima facie case, and the evidence that undermines the employer's proffered reasons for its actions. This is uniquely the role of a fact finder, not the Court."
> Sheridan v. E.I. duPont de Nemours & Co., supra. at p.1072. (Emphasis Added)

## II.    THE DEFENDANT HAS VIOLATED THE "AMERICANS WITH DISABILITIES ACT" BY NOT HIRING STANFORD BURRIS BECAUSE OF HIS DISABILITY OF SPEAKING.

To make a prima facie case of disability discrimination under the ADA, three (3) elements need to be proved. The elements of such a claim are that the plaintiff (1) has a "disability", (2) is a "qualified individual", and (3) has suffered an adverse employment action because of that disability.  Turner v. Hershey Chocolate, U.S. 440 F.3d 604 (3d Cir. 2006).

It is undisputed in this matter that the plaintiff has suffered an adverse employment action, in that he was denied employment.  With regards to the second element, whether he is a qualified individual, as show in the Statement of Facts, he has forty (40) years experience as a truck driver, has taken numerous driving tests, and has never failed a driving test. The defendant has no documentary evidence to support its claim that Mr. Burris' application was denied because he failed the driving test (Moluski 31, 34, B-44, 45).  If the defendant argues that the plaintiff was not qualified since he failed the driving test, that fact is disputed by Burris' testimony that he did not fail the test, and was told that he was successful (Burris 24, B-20). These facts show Mr. Burris was qualified for employment as a truck driver. At a minimum there is a factual issue in dispute, which must be resolved by a jury.  The remaining issue of a prima facie case is whether the plaintiff has a disability.

The uncontradicted evidence in this matter is that the plaintiff, because of his larynx being surgically removed, suffers from a disability, in that he is substantially limited in the major life function of speech and communicating.  That condition is recognized by the regulations issued pursuant to the enactment of the "Americans With Disabilities Act" ("ADA"), 42 U.S.C. §12101 et.seq.  The applicable regulation states that physical impairments include "speech

organs". 29 C.F.R. §1630.2(h)(1), as cited by Sutton v. United Airlines, Inc., 527 U.S. 471, 479-80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

Other cases faced with plaintiffs who have had impairments to their speech have found they are disabled within the meaning of the statute.  In Gottesman v. J.H. Batten, Inc., 286 F.Supp.2d 644, the plaintiff there, as the plaintiff here, had his larynx removed.  There the Court stated his medical history as "...medical doctors performed a full laryngectomy on the plaintiff and surgically removed all the plaintiff's larynx." Gottesman, supra, at p. 609.[1] The Court went on to find that physical condition would qualify as a disability.

Similarly, Dudley v. Hannaford Brothers, Co., 190 F.Supp.2d 69 (D.Ma. 2002) the Court recognized that Title III of the ADA, dealing with public accommodation, would apply to an individual who had limitations in his ability to speak.  In that case the plaintiff, who had suffered brain damage in an auto accident, had difficulty speaking, resulting in garbled and slow speech. The plaintiff, having been denied service in an alcohol beverage store, brought suit under the public accommodation section of the ADA for the defendant's failure to reconsider the decision not to serve him in light of his disability.  That Court again quoted the regulations under the ADA, that speaking was a major life activity.  Dudley v. Hannaford Brothers, Co., supra, at p. 74.  The Court went on to find that the limitations on the plaintiff were substantial enough to merit the prediction of the ADA.

---

[1] The Court in Gottesman defined the larynx as follows:

> "The larynx is 'the musculocartilagionus structure lined with mucus
> membranes, connected to the superior part of the trachea
> and to the pharynx inferior to the tongue and the hyoid bone
> [and] the essential sphincter guarding the entrance into the
> trachea and functioning secondarily as the organ of voice.'
> Dorlend's Illustrated Medical Dictionary, 715 (26 Ed. 1985)."
> Gottesman v. J.H. Batton, Inc., supra, at p. 609, n.2.

In <u>Barnes v. Goodyear Tire & Rubber Co.</u>, 48 S.W.3d 698 (Tenn. 2000) the Court considered, under its state law, a claim for disability dealing with communication and speech. The Tennessee Supreme Court recognized that its state law followed federal law for definitions of disability. <u>Id.</u> at p. 705.   There the Court found that there was a violation of the statute, because the plaintiff had an inability to communicate due to "Bells Palsy", which affected the muscles of the face and throat.   The Court found that the defendant's claim  that the inability to communicate was due to a personality dispute between the plaintiff and his employer, constituted a jury issue.

The fact that Mr. Burris can minimally communicate through the hole in his throat, does not preclude a finding of disability.   As was recognized in <u>Emory v. AstraZeneca Pharmaceuticals, LP</u>, 401 F.3d 174 (3d Cir. 2005),  the requirement of the ADA that an employee be substantially limited does not require a finding that he is entirely unable to, in this case, speak. <u>Id.</u> at 179.  The Court in <u>Emory</u> noted:

> "...the Supreme Court has made clear that '[t]he Act addresses substantial limitations on major life activities, *not utter inabilities*.' <u>Bragdon v. Abbott</u>, 524 U.S. 624, 641, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)(Emphasis Added)" <u>Emory v. AstraZeneca Pharmaceuticals, LP</u> supra., at p. 179.

The Court in <u>Emory</u> went on to cite <u>Fiscus v. Wal-Mart Stores, Inc.</u>, 385 F.3d 378 (3d Cir. 2004) holding:

> "We also read the Supreme Court to uphold that a substantial limitation of a major life activity does not mean impossibility or even great physical difficulty;  rather substantial limitation is weighed in a broad, practical sense." <u>Fiscus v. Wal-Mart</u>, supra, at p. 384.

In order to be substantially limited the employee must be unable to perform a major life activity the **average person** in the general population can perform. 29 <u>C.F.R.</u> §1630.2

(j)(i)(Emphasis Added).   Clearly, the ability to speak, is considered a major life activity, and even the inability to communicate on an electronic devices, given the prolific nature of such devices in our society, would well constitute a major life activity.   The average person in the general population clearly can communicate clearly, either in person, or on electronic communication devices. 29 C.F.R. §1630.2 (j)(1)(ii).

In this matter, the defendant told the Department of Labor that Mr. Burris was not hired because of problems with his voice, and that no reasonable accommodation was available. (Delaware Department of Labor Decision, B-9).   During discovery in this matter the defendant has shifted his position, and now claims that the plaintiff failed his driving test (Defendant's Opening Brief, Argument III, p. 5).   It seems clear that the defendant is guilty of shifting its reasons for not hiring the plaintiff, first stating that a reasonable accommodation was available for his disability of speaking, as told to the Delaware Department of Labor. Now the defendant claims that the reason Mr. Burris was not hired was that he failed the driving test.   With no documentary evidence to support such a claimed non-discriminatory reason for not hiring Mr. Burris, the defendant's reason must be deemed pretextual. The law is axiomatic that a reasonable jury could infer such a shifting of explanations are a mere pretext for unlawful discrimination. Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 284 (3d Cir. 2001) (shifting reasons for an adverse action may undermine the credibility and provide evidence of pretext); Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)(inconsistencies and contradictions are a proper basis to prove a decision was a product of discriminatory animus, (as cited in Lake v. A.K. Steel Corporation, 2006 WL 1158610 (W.D. Pa. 2006, at p. 30))

Summary judgment must be denied in light of the plaintiff's proof of a prima facie case of discrimination under the ADA, and to factual issues of pretext of the defendant's asserted reasons for not hiring Mr. Burris.

### III.    THE DEFENDANT REFUSED TO HIRE STANFORD BURRIS BECAUSE IT REGARDED HIM AS DISABLED.

An individual may be the victim of discrimination under the "American With Disabilities Act", 42 U.S.C. §12101 et.seq.  if the employer regards him as having a disability.  In order to fall within the protections of the act under the "regarded as" rule, a person must demonstrate that he:

> "(1)    Has a physical or mental impairment that does not substantially limit a major life activity, but is treated by the covered entity as constituting such a limitation;
>
> (2)    Has a physical or mental impairment that substantially limits major life activities, only as a result of the attitudes of others towards such impairment; or
>
> (3)    Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment." Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751, 766; Taylor v. Pathmark Stores, Inc., 177 F.3d, 180, 188 (3d Cir. 1999) (quoting 29 C.F.R. §1630.2(1).[2]

In McGinnis v. Alamo Community College, 207 F.3d 274 (5th Cir. 2000), the Court held that where, as a result of a closed head injury, the plaintiff there, suffered from slurred speech and other physical impairments, there was a factual issue as to whether or not his employer regarded him as disabled.  In the present case, given the statements that the defendants made to the Delaware Department of Labor, that Mr. Burris could not communicate with them adequately during the course of his employment that they would not hire him,  as well as the admission that Mr. Burris was difficult to understand (Moluski 38, B-47), there is a clear factual and jury issue

---

[2] There is no inconsistency or inappropriateness in the plaintiff alleging both that he was discriminated against because he was disabled, and that he was discriminated against because the defendant regarded him as disabled. Taylor v. Pathmark Stores, Inc., supra, at p. 189 (recognizing that such claims are not intrinsically contradictory, citing: Arnold v. United Parcel Service, Inc., 136 F.3d 854, 860, 862 (1st Cir. 1998)(holding that there is no conflict in bringing a claim for an actual disability and at the same time as a "regarded as" claim).

as to whether or not the defendants regarded Mr. Burris as disabled.  Similarly, in Johnson v. American Chamber of Commerce Publishers, Inc., 108 F.3d 818 (7th Cir. 1997) that Court held that there was an issue as to whether or not the employer regarded the employee as disabled. There, the employee had sought a job as a telemarketer, and after three days of training, was told that he would not receive a job.  The employee was missing eighteen (18) teeth and it was claimed as a result of that, he "mumbled" on the phone.  Thus, the defendant thought the employee was not a "good match" for the job.  Johnson, supra, at p. 819.  As that Court observed: "[U]nlike Johnson the Americans With Disabilities Act has teeth."Id. at p. 819-820.

In Taylor v. Pathmark, supra., the Court recognized: "...that the ADA has, as a major purpose of the protection of individuals who are subject to stereotypes about their ability." Taylor v. Pathmark, supra, at p. 192.

> "[I]f an individual can show that an employer or other covered
> entity made an employment decision because of a perception of
> a disability based upon 'myth, fear or stereotype' the individual
> has satisfied the 'regarded as' part of the definition of disability."
> 29 C.F.R. pt. 630, app. §1630.2(l). See also:  Williams v. Philadelphia
> Housing Authority, supra, at 770 n.14; Taylor v. Pathmark, supra, at p.191.

It is clear, that here, minimally, that there is an issue of fact as to whether or not the defendants regarded Mr. Burris as disabled.  If the examination is limited to the record of the Delaware Department of Labor's consideration and decision, it would be uncontradicted that the defendant regarded him as disabled in his ability to communicate and to speak.  If the issue is based upon the testimony of the parties, then there is an issue of fact between the testimony of Mr. Moluski/Mr. Thompson and the plaintiff.

1.     Mr. Thompson testified that he might not have been truthful with the Delaware Department of Labor, when he told them that Mr. Burris was not hired because he could not communicate on a CB radio or cell phone.

2.      Mr. Moluski denies any testing on a CB radio or a cell phone.

3.      Mr. Burris unequivocally states that that he was tested on a CB radio, could communicate with a secretary in the office, but nevertheless was not hired because Mr. Moluski, on behalf of the defendant, asserted that he could not communicate.[3]

The factual record in this matter appears almost uncontradicted that the plaintiff was not hired because, at a minimum, the defendant considered him disabled that is they "regarded" him as disabled in his ability to speak and to communicate.

For these reasons, the defendant's motion for summary should be denied.

---

[3] The tangled web of testimony between Mr. Moluski, and Mr. Thompson is problematical. Clearly, either Mr. Thompson or Mr. Moluski did not tell the truth in this matter.  There are two versions, Mr. Moluski's version that there was no testing of the plaintiff on a CB radio, as compared to Mr. Thompson's version, when he communicated with the Delaware Department of Labor, that Mr. Burris was tested on his ability to speak on a CB radio, and not hired for that reason.  Now, in these proceedings, Mr. Thompson attempts to recant his communication with the Delaware Department of Labor stating that he was speaking only "informally", trying to make the matter "go away", and admitting that he might not have been truthful to the Delaware Department of Labor.

## <u>CONCLUSION</u>

For the reasons state herein, the Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted,


_____/s/ Gary W. Aber_____
GARY W. ABER (DSB #754)
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899
(302) 472-4900
Attorney for Plaintiff

DATED: August 18, 2006

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that two copies of the attached pleading was hand delivered and sent via electronic filing on August 18, 2006 to the following counsel:

Matthew P. Donelson, Esquire
Elzufon, Austin, Reardon,
 Tarlov & Mondell
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE  19899


/s/ Melissa A. Chionchio
Melissa A. Chionchio
Secretary to Gary W. Aber, Esquire