IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STANFORD L. BURRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-1496 |
| | ) | |
| RICHARDS PAVING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE THAT PLAINTIFF IS ACTUALLY DISABLED WITHIN THE MEANING OF THE "AMERICANS WITH DISABILITIES ACT".**

The plaintiff, Stanford L. Burris, responds to the defendant's motion to preclude him for offering evidence that he is actually disabled within the meaning of the "American With Disabilities Act" as follows:

1. In the present case, the evidence in this matter will show that the plaintiff has had his larynx surgically removed in 1991 (Burris Depo. p. 14, Exhibit No. 1).

2. As a result of his larynx being surgically removed there is an obvious effect on his ability to speak, which forces him to speak with esophageal speech and to have an altered voice, both of which are self-evident. (Plaintiff's Answers to Defendant's Interrogatories, Nos. 18 & 19; Exhibit No. 2).

3. When questioned at his deposition, by the defendant's attorney as to whether he considered himself disabled, Mr. Burris answered: "Both yes and no." (Burris Depo, p. 19, Exhibit No. 1), and continued:

> "I am sorry. Is there anything that we can do - - I try not to think about this. Please let's move on to something else, because it really does upset me, because I don't like the way I sound. I don't like what

> happened. Please. I get emotional, because all the trouble I went through, I don't want to - - I really don't want to talk about it.
>
> \* \* \* \*
>
> Yes, I can't do everything that a normal person can do. Some words I can't pronounce as good as other people." (Burris Depo., p.20, Exhibit No. 1).

Mr. Burris went on to describe that many employers considered him disabled because of his voice (Depo Burris, p. 21, Exhibit No. 1).

4. The defendant's basic position is that there is no expert report to confirm the plaintiff's disability. (Defendant's Motion in Limine, ¶3).

5. It is well established that a reasonable jury, as a fact finder, in a matter arising under the "Americans With Disabilities Act", can find that an individual is disabled, even without expert medical testimony. Katz v. Citi Bank Co., Inc., 87 F.3d 26, 31 (1st Cir. 1996). The Third Circuit has adopted the rule in Katz, in Marinelli v. City of Erie, PA, 216 F.3d 354, 360 (3d Cir. 2000) where the Court recognized that there were cases where a plaintiff himself, in a disability case, would be capable of offering a description of his symptoms that would allow a jury to determine the plaintiff did suffer from a disability, citing Colwell v. Suffolk County Police Dep't., 967 F.Supp. 1419, 1425-26 (E.D.N.Y. 1997)(which held that nothing in the ADA requires the conclusion that medical evidence is necessary to establish a disability status). See also: Brandon v. Klingensmith Healthcare, Inc., 2005 WL 3434141 (W.D.Pa. 2005)(recognizing while holding inapplicable, the rule that in some ADA cases the plaintiff's testimony, without more, has been found to be adequate to support a claim for disability under the ADA); Gallimore v. Newman Machine Co., Inc., 301 F.Supp.2d 431 (M.D.N.C. 2004).

6. It will be self-evident to the jury, that Mr. Burris has a substantial limitation in the major life function of speaking and talking. This impairment is clearly "...within the

comprehension of a jury that does not possess and command of medical or otherwise scientific knowledge." Marinelli v. City of Erie, PA, supra, at p. 360.

  WHEREFORE, the plaintiff requests this Court to deny the defendant's motion in limine.

                  ABER, GOLDLUST, BAKER & OVER

                  /s/ Gary W. Aber
                  GARY W. ABER (DSB #754)
                  702 King Street, Suite 600
                  P.O. Box 1675
                  Wilmington, DE 19899
                  (302) 472-4900
                  Attorney for Plaintiff

DATED: November 8, 2006

# EXHIBIT 1

Page 1

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE

Stanford L. Burris            :
                              :
     Plaintiff,               :
                              :  C.A. No.
     v.                       :  04-1469-SLR
                              :
Richards Paving, Inc.         :
                              :
     Defendant.               :


            Deposition of STANFORD L. BURRIS,

taken pursuant to notice before Adam D. Miller,

Registered Professional Reporter and Certified

Shorthand Reporter, in the law offices of Elzufon

Austin Reardon Tarlov & Mondell, P.A., 300 Delaware

Avenue, Suite 1700, Wilmington, Delaware, on

Wednesday, June 14, 2006, beginning at approximately

9:57 a.m., there being present:

APPEARANCES:

        ABER, GOLDLUST, BAKER & OVER
          One Customs House, Suite 600
          702 King Street
          P.O. Box 1675
          Wilmington, Delaware 19899-1675
        BY:  GARY W. ABER, ESQUIRE
        Attorney for Plaintiff



               CORBETT & WILCOX
         Registered Professional Reporters
   230 North Market Street    Wilmington, DE 19801
                (302) 571-0510
            www.corbettreporting.com
```

Corbett & Wilcox

1  What did you do during the interview process?
2      A.   He sat down and looked over my
3  application, and he said he was going to road-test
4  me.
5      Q.   Did he ask you any questions at that time?
6      A.   I don't remember.
7      Q.   I understand you carry an electronic, what
8  I'm going to term as an electronic voice box?
9      A.   (Indicating.)
10     Q.   No?
11     A.   No, sir.  I didn't have it that day.
12     Q.   Okay.  I'm going to get back to that, but
13 I do understand that you have one; is that correct?
14     A.   Yes, I do -- I did have one.
15     Q.   You no longer use -- have one?
16     A.   I've not used it, actually, since '91 or
17 '92.
18     Q.   I understand you had your surgery to
19 remove the larynx in 1991; is that correct?
20     A.   That's correct.
21     Q.   So would I be correct in saying that you,
22 since 1991 or 1992, you have not used what I'll term
23 the electronic voice box?
24     A.   That's correct.

1   remember their names.  Then I went to Wilmington
2   Hospital because it was closer.  Sir, I can't, I
3   can't recall the names.
4         Q.    Okay.  Have you seen any other doctor
5   about your speech or your voice other that Dr. Witt
6   and your speech therapist?
7         A.    Could you break that down and explain it a
8   little bit more?
9         Q.    Sure.  Have you seen any other doctors
10  about your larynx or any problems associated with
11  your larynx?
12        A.    I don't understand what you're trying to
13  ask me.
14        Q.    Well, who's your family physician?
15        A.    James Thomas.
16        Q.    How long have you been going Dr. Thomas?
17        A.    Years.
18        Q.    Did Dr. Thomas ever tell you to stop using
19  your electronic larynx?
20        A.    I don't think Dr. Thomas ever seen me talk
21  on the electric larynx.  As soon as my surgery was
22  over, I started therapy right away because I wanted
23  to learn how to talk again.
24              When I first had it, I was catching a

Stanford L. Burris

Page 19

```
 1    lot of colds.  Dr. Kestner was my pulmonary doctor.
 2         Q.   Do you still see Dr. Kestner?
 3         A.   I haven't seen him in a while because I
 4    owe him an old bill I haven't been able to pay yet.
 5         Q.   During a typical day, are you able to
 6    engage in conversation with other people without
 7    using the electronic larynx?
 8         A.   Sir, I haven't used the electric larynx
 9    since the surgery.  But after the surgery and my neck
10    was well enough, I think I started to use the
11    larynx -- oh, probably used the larynx probably about
12    a month.  But when I started the physical therapy,
13    they said to try not to use it.
14         Q.   You testified you don't use the electronic
15    larynx.  Do you consider yourself disabled?
16              MR. ABER:  Objection.
17              MR. DONELSON:  You can answer.
18              MR. ABER:  Go ahead.  You can answer.
19              THE WITNESS:  Yes and no.
20    BY MR. DONELSON:
21         Q.   What do you mean by "yes and no"?
22         A.   Well, if you ask me can I swim, I can't
23    swim.  But I can do everything else.
24         Q.   Okay.  Does swimming have anything to do
```

1  with your voice?
2      A.  Sure, it do.  I have an opening in my
3  neck.  I'd drown if I tried to swim.
4      Q.  So what do you mean when you say "yes,"
5  you consider yourself --
6      A.  I'm sorry.  Is there anything that we can
7  do -- I try not to think about this.  Please let's
8  move on to something else, because it really does
9  upset me because I don't like the way I sound.  I
10 don't like what happened.  Please.  I get emotional.
11 Because of all the trouble I went through, I don't
12 want to -- I really don't want to talk about it.
13     Q.  Well, sir, I have to ask you these
14 questions.  And, believe me, I'm not trying to upset
15 you, but I need to ask you these questions.
16          When you said "yes," how do you
17 consider yourself disabled, other than you can't
18 swim?
19     A.  I said "yes and no."
20     Q.  What do you mean by when you say "yes"?
21     A.  Yes, I can't do everything that a normal
22 person do.  Some words I can't pronounce as good as
23 other people.  And I said "no" because any type of
24 work, I can do.

Stanford L. Burris

Page 21

1    Q.    Sir, work-wise, you don't consider
2  yourself disabled?
3    A.    Well, I don't.  But a lot of the employers
4  consider me as disabled.  The facts on this case --
5  when the, the personnel from, from Richards said that
6  they couldn't use me because of my voice -- answers
7  the question right there.
8    Q.    You said other -- you said you don't
9  consider yourself disabled, but other, I guess,
10 employees or employers do.  What other employers have
11 considered you disabled?
12   A.    I can't even name them because I have been
13 filling applications and applying to jobs; maybe
14 somebody would hire me.  I'd start talking, and that
15 would be it.
16   Q.    Do you have any specific names of certain
17 companies that you've applied to and believe they
18 haven't hired you because of your voice?
19   A.    You got evidence right in your records.
20 Richards said -- the defendant said that they can't
21 use me because of my voice.
22   Q.    I understand you're saying Richards.  Is
23 there any other companies that you can recall that
24 have --

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STANFORD L. BURRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 04-1496 |
| | ) | |
| RICHARDS PAVING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S
FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF**

1. Identify all persons who have direct knowledge of or were eyewitness to the facts alleged in the complaint.

    **ANSWER**: Plaintiff and personnel of Richards Paving.

2. Identify all persons, other than those listed in the answers to Interrogatory No. 1, who have knowledge of the facts concerning how the events alleged in the complaint occurred.

    **ANSWER**: See answer to Interrogatory No. 1

3. Identify all persons who have knowledge of any facts alleged in the pleadings other than those persons given in the answers to Interrogatories No. 1 and No.2.

    **ANSWER**: In addition to those people identified in Interrogatory Nos. 1 and 2, my treating physician, Joseph Kestner, Jr., M.D. 7th and Clayton Streets, Wilmington, Delaware 19805, (302) 656-2231.

4. Identify all persons who have been interviewed by you or on your behalf with regard to the facts alleged in the pleadings. In addition thereto, please state the date of each interview, the substance of each interview, and identify all persons who have copies of a resume or transcript of each interview.

16. With regard to paragraph 18 of the complaint, please identify any and all certifications or licenses that the plaintiff possesses that pertain to driving a truck, including but not limited to the length of certification or licensing, the time of obtaining said certification or licensing, and the termination, if any, of said certification or licensing as well as the reasons surrounding any such termination and identify all documents which relate to, pertain to, or mention such facts, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, please attach copies of all such documents to these answers to the interrogatories.

**ANSWER**: I have a Delaware license, which is a CDL license for tractor trailers. I also have a Delaware Dump Truck Certification. In addition, I have a certification for school and charter bus operation. Also, recently, I have taken a test and have been examined for a DOT certification for New Jersey.

17. With regard to paragraph 19 of the complaint, please explain in detail the full extent of plaintiff's injuries to his larynx, including the cause of such injury, the treatment of such injury, and identify all the doctors who have treated plaintiff's injury and identify all documents which relate to, pertain to, or mention such facts, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, please attach copies of all such documents to these answers to the interrogatories.

**ANSWER**: My larynx was removed because of cancer. My treating physician was Robert L. Witt, M.D., this occurred in 1991. I do not have any documents relating to this.

18. Please identify and explain any and all limitations placed on the plaintiff as a result of the injury to his larynx and any measures taken to reduce such limitations.

**ANSWER**: The injury causes an obvious alteration of my voice, because I speak with esophageal speech. In addition, I have limitations in breathing if I am in a confined space.

19. Please explain how the injuries to plaintiff's larynx prevent him from talking in a normal fashion, the steps taken to assist the plaintiff in speaking, and please describe in detail all manner of physical and mechanical assistance necessary to aid to the plaintiff in speaking.

**ANSWER**: The injury to my larynx causes me to have an altered voice, which is self-evident when listening to me. I have been provided an electronic larynx to speak, and I find I do not need it if I speak slowly.

20. Please give a detailed description of all previous or pending litigation of which the plaintiff is a party, including but not limited to the nature of the proceedings and the outcome of the litigation.

**ANSWER**: Objection: This interrogatory does not seek relevant information nor is reasonably calculated to lead to relevant discovery.

21. With regard to the allegation in paragraph 20 of the complaint, stating that the plaintiff had been employed as a truck driver before, please identify all the places in which the plaintiff was employed as a truck driver, his responsibilities as a truck driver including the extent of his use of a CB radio and or cell phone, the period of employment, the plaintiff's reasons for leaving such employment and identify all persons with knowledge of said employment and identify all documents which relate to, pertain to, or mention such facts, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, please attach copies of all such documents to these answers to the interrogatories.

**ANSWER**: Diamond Materials, Daisey Construction, Harmony Construction (no CB's) and Cirillo Brothers.

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that two copies of the attached pleading were hand delivered and sent via electronic filing on November 8, 2006 to the following counsel:

    Matthew P. Donelson, Esquire
    Elzufon, Austin, Reardon,
      Tarlov & Mondell
    300 Delaware Avenue, Suite 1700
    P.O. Box 1630
    Wilmington, DE  19899

                              /s/ Melissa A. Chionchio
                              Melissa A. Chionchio
                              Secretary to Gary W. Aber, Esquire