IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STANFORD L. BURRIS,                )
                                   )
            Plaintiff,             )
                                   )
        v.                         )          C.A. No.: 04-1496
                                   )
RICHARDS PAVING, INC.              )
                                   )
            Defendant.             )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO
PRECLUDE TESTIMONY AND INTRODUCTION OF THE DELAWARE
DEPARTMENT OF LABOR'S NOTICE OF REASONABLE CAUSE FINDING**

The plaintiff, Stanford L. Burris, responds to the Defendant's Motion to Exclude Testimony Concerning and/or Introduction of the Delaware Department of Labor's Notice of "Reasonable Cause Finding" as follows:

1.      The Delaware Department of Labor, on April 30, 2004 issued a "Notice of Reasonable Cause Finding" to the plaintiff (Exhibit No. 1).

2.      In that "Notice of Reasonable Cause Finding", the Delaware Department of Labor recited the defendant's admission:

> "Respondent (Richards) had an interview with charging party (Burris) where the interviewer and charging party attempted to communicate using both a CB radio and cell phone in an attempt to find a reasonable accommodation to charging party's disability."

> \*          \*          \*          \*

> "Respondent claims that attempts were made at the interview to communicate with charging party over CB radio and cell phone and were unsuccessful...respondent states that there were no accommodations that could have been made for charging party and those accommodations, which could have been a possibility, they would have caused respondent an undue hardship." Delaware Department of Labor "Reasonable Cause Finding" (Exhibit No. 1)

3.    During the discovery of this matter, the President of the defendant, Jeffrey Thompson stated that he responded to the Department of Labor only on an "informal basis" (Thompson Depo, p. 10; Exhibit No. 2), and stated specifically:

> "I would tell the truth. But on an informal basis, there would be a big distinction between how you were going to address an issue, how the issue was going to be used at a future date. (Thompson Depo, p. 10, Exhibit No. 2).

Thompson went on to state that he would lie to a government agency and the State of Delaware under some circumstances (Thompson Depo, p. 13, Exhibit No. 2), and admits that he would have lied to the Department of Labor in his responses (Thompson Depo, p. 14, Exhibit No. 2). Thompson went on, to specifically deny the representations that he made to the Delaware Department of Labor, that there had been attempts to communicate with the plaintiff via a CB radio and a cell phone (Thompson Depo, p. 17-18, Exhibit No. 2). Thompson finally admitted that he made those statements to the Department of Labor in the hope that "the whole affair would go away." (Thompson Depo. p. 20, Exhibit No. 2). At the same time that Thompson was admitting that the plaintiff had been tested on a CB radio and cell phone, other testimony submitted on behalf of the defendant, by David Moluski stated that there was no test of the plaintiff for the use of a CB radio or a cell phone (Moluski Depo., p. 29, Exhibit No. 3).

4.    The law regarding the admissibility of reports of a government body in employment matters, EEOC Determinations or Department of Labor "Cause Findings", has been examined in Coleman v. Home Depot, Inc., 306 F.3d 1333 (3d Cir. 2002). In that case, while the Circuit Court recognized that a determination such as issued by the Delaware Department of Labor would admissible under Rule 803(8)(c), F.R.E., unless challenged as untrustworthy, which is not been done in this case by the defendant. Such determination might exclude, in he exercise of the trial Court's, discretion under Rule 403, F.R.E., where it could be shown that the

prejudice to the defendant in admitting the report would outweigh any probative value.   In Coleman, the admission of the report, by the trial court, would have occurred after the presentation of all evidence, which arguably would have been the same evidence considered by the EEOC. The Court went on to examine the admission of the EEOC's finding under Rule 403, to determine whether the probative value of the evidence was "substantially outweighed". Id. 1344. The Court recognized:

> "...there is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it.  As a result evidence that is highly probative is exceptionally difficult to exclude." Coleman v. Home Depot, supra. at p. 1343-1344.

The Circuit Court went on to decide that the District Court, in the exercise of its discretion should have found that the negative factors, listed in Rule 403, substantially outweighed the probative value of the EEOC determination since, the EEOC determination had concluded that the Home Depot had systematically been guilty of discrimination. Thus, Home Depot would have had to present evidence showing that there was no such systematic discrimination, which would have involved a great deal of testimony and trial time, within a trial, concerning employment histories of a large number of former employees, in addition to plaintiff.

By comparison, the Delaware Department of Labor "Reasonable Cause Finding" is highly probative in this matter for the purposes of impeaching the expected testimony of the defendant's witnesses.  Statements made by the president of the defendant, Jeffrey Thompson, to the Delaware Department of Labor was an admission that the plaintiff had been tested on a CB radio and a cell phone and communication was difficult, and no accommodation could be found. By contrast, Mr. Thompson's testimony under oath at his deposition was directly to the contrary, which he denied all such facts.  Not only did Thompson deny the admission to the Delaware

Department of Labor[1], but he testified under oath that he had lied to the Delaware Department of Labor. Clearly, such issues of credibility far outweigh any prejudice to the defendant. In this case, unlike Coleman, there would be no "trial within a trial" dealing with the extraneous factors of numerous other alleged victims of discrimination, which the court in Coleman found to tip the balance against the admission of the EEOC report.

5.    It is clear that the admission to the Delaware Department of Labor in its Determination, is clearly to be made by the trial court in the exercise of its discretion. Starceski v. Westinghouse Electric Corp., 54 F.3d 109, n.12 (3d Cir. 1995); Abrams v. Lightolier, Inc., 702 F.Supp. 509, 512 (D.N.J. 1989). See also: Coleman v. Home Depot, supra., at p. 1345.

6.    This Court has on at least two occasions considered the admission of findings by the Delaware Department of Labor In Sprull v. Winner Ford of Dover, Ltd., 175 F.R.D. 194 (D.Del. 1997) the court declined to allow the admission of the findings of the DDOL although it stated it was "...loath to hold the findings of the DDOL are inadmissible based on lack of trustworthiness...." Id. at 197. The Court went on to find that the findings of the DDOL were cumulative since the defendant had admitted his statements that he had referred to the plaintiff in racist terms. In the present case, the findings of the DDOL are being offered not in a cumulative fashion, but for the opposite reason, to impeach the defendant. The DDOL findings recite that the defendant had admitted that it refused to hire the plaintiff because he could not understand him on a CB radio. The defendant's testimony at deposition was exactly the opposite, in that any such communication was exactly opposite, and in fact, the defendant had admitted that he had not told the truth the Department of Labor. Thus, the findings of the DDOL serve to establish

---

[1] The statements related by defendant's representatives to the Delaware Department of Labor would also be admissible under Rule 801(d)(2)(A), as an admission by a party's representative.

significant issues of credibility and believability of any testimony by the defendant in conformance with deposition testimony.

In Whitefield v. Pathmark Stores, Inc., 1999 WL 222459 (D.Del. 1999) the Court again ruled that the factual findings in the determination were unnecessarily cumulative. By comparison, in the present case, the facts recited in the determination is not cumulative, but are used for the expressed purpose of impeachment of the defendant's representatives.[2]

7.     The defendant, in its motion in limine, states (¶8) that the introduction of the "Reasonable Cause Finding" would be severely prejudicial to the defendant.   However, the defendant does not describe or even suggest how it would prejudicial.  It is important to note that the Court in Coleman v. Home Depot, Inc. stressed that the mere fact that the evidence would be harmful to a party's case, does not equate to "unfair prejudice", since any evidence which harms a party's case is by definition prejudicial.

> "It is worth stressing that the term 'unfair prejudice' as a factor against which the probative value of evidence is weighed under Rule 403 is often misstated as mere prejudice.  Indeed, any evidence that intends to harm a party's case could be said to be prejudicial.  Thus, the prejudicial fact of admitting the evidence must rise to a level of creating unfair prejudice for one of the parties for the evidence to be excluded under Rule 403".  Coleman v. Home Depot, supra, at 1344 n.6 (Italics by the Court)

WHEREFORE, the plaintiff requests this Court to deny the defendant's motion in limine to deny the admission of the Delaware Department of Labor's "Reasonable Cause Finding".

---

[2] Despite strenuous efforts by the plaintiff's attorney, the DDOL investigative file cannot be located.  After the decision by the DDOL this matter was forwarded to the EEOC for review. The EEOC responded by producing what remained of its file (Exhibit No. 4, attached). Unfortunately, the EEOC's file did not contain any of the factual submissions made to the DDOL.  Further, the defendant has indicated that it can no longer locate its own submission to the DDOL.  Thus, the factual recitations in the DDOL determination are the only evidence of the contradictory statements made by the defendant.

ABER, GOLDLUST, BAKER & OVER


/s/  Gary W. Aber
GARY W. ABER (DSB #754)
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
(302) 472-4900
Attorney for Plaintiff

DATED:  November 8, 2006

# EXHIBIT 1



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8⬛
FAX (302) 761-6⬛

## NOTICE OF REASONABLE CAUSE FINDING

RE:  Burris v. Richards Paving Inc.                    State Case No.: 03061071

On May 9, 2003, Mr. Stanford Burris filed a Charge of Discrimination against Richards Paving, Inc. The Charge of Discrimination is hereby incorporated by reference.

Reasonable Cause Finding:

On April 30, 2004, the Department of Labor concluded its investigation and now finds, based on the following facts, that there is reasonable cause to believe that a violation of the State Discrimination Act has occurred.

I.   Undisputed Facts:
   1.  Charging Party applied for a Truck Driver position with Respondent on or about 04/03/03.
   2.  Respondent had an interview with Charging Party where the interviewer and Charging Party attempted to communicate using both a CB radio and a cell phone in an attempt to find a reasonable accommodation to Charging Party's disability.
   3.  Respondent did not hire Charging Party for this position.

II.   Disputed Facts:
   1.  Charging Party states that the representative of Respondent stated Charging Party was not being hired because of his voice.  Respondent further stated that Charging Party could not be heard over the CB radio and therefore could not be hired as a Truck Driver.
   2.  Respondent claims that attempts were made at the interview to communicate with Charging Party over the CB radio and cell phone and were unsuccessful.
   3.  Respondent states that there were no accommodations that could have been made for Charging Party and of those accommodations, which could have been a possibility, they would have caused Respondent an undue hardship.

III.   Resolution of Material Facts in Dispute:

   1.  Charging Party has currently been employed by a trucking company for a period of 6 months where he used and communicated with a CB radio successfully.

2. Respondent was unable to demonstrate that there are no accommodations that could have been made.
3. Respondent failed to provide evidence that the reasonable accommodations that could have been utilized would have caused an undue hardship.
4. Respondent corroborated that in their business there is a limited amount of deliveries of their products that are delivered without complications and that these deliveries could be delivered by Charging Party.

IV.   Resolution:

1. Charging Party met his burden of showing that he was discriminated against based on his disability.

The Charge of Discrimination, State Case No. 03061071 will be administratively processed and assigned to a conciliation officer in an effort to administratively resolve the complaint pursuant to 19 *Del. C.* Section 712(c).

7/30/04
DATE

MELINDA SHELTON
INVESTIGATOR
LABOR LAW ENFORCEMENT OFFICER

4/30/04
DATE

JULIE CUTLER
LABOR LAW ENFORCEMENT SUPERVISOR

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Stanford L. Burris<br>88 Karlyn Drive<br>New Castle, DE 19720 | From: U. S. Equal Employment Opportunity Commission<br>Philadelphia District Office<br>21 South 5th Street - Suite 400<br>Philadelphia, PA 19106-2515 |

[    ]    *On behalf of person(s) aggrieved whose identity is*
         *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2003-00419 (formerly 17CA300419) | Legal Unit | 215-440-2828 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[    ] .   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*                                                    *August 27, 2003*

Enclosure(s)

Marie M. Tomasso, District Director                            *(Date Mailed)*

cc:    Richards Paving, Inc.



Equal Employment Opportunity Commission
Philadelphia District Office
21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515

STANFORD BURRIS
88 KARLYN DR
NEW CASTLE DE 19720

U.S. OFFICIAL MAIL



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

April 30, 2004

Mr. Stanford Burris
88 Karlyn Drive
New Castle, DE 19720

Re:    Burris v. Richards Paving, Inc.
       Case No.: 03061071/17CA300419
       Notice of Reasonable Cause Finding

Dear Mr. Burris:

Enclosed is the Agency's determination in regard to the above-referenced matter. Based on the facts we were able to obtain from our investigation, we have found reasonable cause to believe that there has been a violation of Title 19, Delaware Code, Chapter 7, Subchapter III, as amended.

The next step in this Agency's administrative efforts to resolve this matter is to attempt conciliation. If conciliation fails for any reason, the Charging Party may elect to have a public hearing before Delaware's Equal Employment Review Board, or may elect a letter of Right to Sue from the Equal Employment Opportunity Commission and then proceed to Federal District Court.

☐    *To Charging Party only: Please find enclosed a request for information which will be required in order to attempt to secure an appropriate remedy. Please complete the enclosed request and return it within fifteen (15) days. If you should have any further questions or concerns, please contact Ms. Melinda Shelton who will be handling the conciliation in this matter.*

Sincerely,

*Julie Cutler / ✒*

Julie Cutler, Supervisor
Office of Labor Law Enforcement

JKC/lcf

Enclosures:    Notice of Reasonable Cause Finding
               Conciliation Questionnaire

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STANFORD L. BURRIS,                )
                                   )
          Plaintiff,               )
                                   )    Civil Action
v.                                 )    No. 04-1469
                                   )
RICHARDS PAVING,                   )
                                   )
          Defendant.               )


        Deposition of JEFFREY THOMPSON taken pursuant
to notice at the law offices of Aber, Goldlust, Baker &
Over, 702 King Street, Wilmington, Delaware, beginning at
2:30 p.m. on Wednesday, July 19, 2006, before Eleanor J.
Schwandt, Registered Merit Reporter and Notary Public.


APPEARANCES:

          GARY W. ABER, ESQ.
          ABER, GOLDLUST, BAKER & OVER
            702 King Street
            Wilmington, Delaware  19801
            for the Plaintiff

          MATTHEW P. DONELSON, ESQ.
          ELZUFON, AUSTIN, REARDON, TARLOV & MONDELL, P.A.
            300 Delaware  Avenue - Suite 1700
            Wilmington, Delaware  19801
            for the Defendant




                   WILCOX & FETZER
      1330 King Street -  Wilmington, Delaware 19801
                   (302) 655-0477
                   www.wilfet.com





1   had no dealings with the Department of Labor and

2   identified you as the person who dealt with the

3   Department of Labor during the complaint process.  Was he

4   correct?

5        A.   To the extent that I responded to the Department

6   of Labor one time, that would be -- that is correct.  I

7   don't really know what happened beyond that point until

8   this case developed.

9        Q.   Okay.  Well, they asked for a response at one

10  time, then they made certain findings and this lawsuit

11  resulted.  Did anybody from Richards Paving other than

12  you have any dealings with the Department of Labor?

13       A.   Not to my knowledge.

14       Q.   So any information the Department of Labor got

15  from your side would have come from you?

16       A.   To the best of my knowledge.

17            And I would like to add that the information

18  that was provided to the Department of Labor at their

19  request was done informally.

20       Q.   You mean by telephone?

21       A.   By telephone and in writing.

22       Q.   Okay.  Do you have copies of that writing?

23       A.   No, I do not.

24       Q.   Why not?



 1        A.    I didn't know I needed to bring it.

 2        Q.    Okay.  Do they still exist?

 3        A.    I don't know.

 4        Q.    Would you have just destroyed them?

 5        A.    I may have.  I'm not even sure how old this case

 6   is.  Is it three years old.  I really don't know.

 7        Q.    The Department of Labor made its findings on

 8   April 30th, 2004.

 9        A.    So it is more than two years old.

10        Q.    A little over two years, yes.

11        A.    I don't know if I still have anything or not.

12   Again, everything was very informal, as they had notified

13   me.

14        Q.    Mr. Burris made an allegation of discrimination

15   against your department.  You understand that?

16        A.    Yes.

17        Q.    And the Department of Labor contacted you, both

18   verbally and I guess in writing, wanting to know your

19   version of why he wasn't hired?

20        A.    Yes.

21        Q.    What did you tell them?

22        A.    I told them that I did not know.  In fact, I did

23   not even know who he was.

24        Q.    So you provided them no information?

1    Q.    You understood he was making a charge of

2    discrimination for not being hired?

3    A.    Correct.

4    Q.    And you didn't know who he was from Adam?

5    A.    Correct.

6    Q.    And you were going to have to explain to the

7    Department of Labor your company's position as to why he

8    was not hired?

9    A.    On an informal basis, yes.

10    Q.    Well, informal, formal, it doesn't matter?

11    A.    It makes a very big difference, if I may disagree

12    with you.  That's a very, very big difference.

13    Q.    What is the difference?

14    A.    On an informal --

15    Q.    You would tell the truth in either case, wouldn't

16    you, whether it was formal or informal?

17    A.    I would tell the truth.  But on a informal,

18    casual basis, there is a very big distinction between how

19    you are going to address an issue and whether that issue

20    is going to be used at a future date.

21    Q.    What is the difference?  Explain to me.  Because

22    to me, if somebody makes an inquiry, you tell them the

23    truth.  You can do it informally or you can do it

24    formally, but the content of the response would be the

1    truth in either case.   Would you agree with that?

2        A.   I believe, Mr. Aber, you made the perfect example

3    I would use right here when you asked to speak off the

4    record and asked about a paving inquiry.

5        Q.   Well --

6        A.   If you allow me to finish, that was a perfect

7    example I would use, speaking off the record is exactly

8    what happened in this case.

9        Q.   When you speak off the record do you not tell the

10   truth?

11       A.   When I speak off the record do I not tell the

12   truth?

13                MR. DONELSON:   Object to form.

14       Q.   Let me rephrase it.   When you speak to someone

15   off the record do you lie?

16       A.   No, I do not lie.

17       Q.   When you speak off the record do you tell the

18   truth?

19       A.   If I understand the facts, yes.   If I understand

20   the facts.

21       Q.   When you speak off the record do you make up

22   things out of your imagination?

23       A.   I can.

24       Q.   Would you have made up a reason for his



1  tell me that DelDOT is awful, I forget the exact word you

2  used, but you wouldn't tell me that unless you really

3  thought there was some problems with DelDOT, would you?

4      A.    Now I'm confused.

5      Q.    So am I.   That makes two of us, and I think I'm

6  more confused than you.   I'm trying to understand that

7  when you are talking off the record, do you tell the

8  truth or do you make things up?

9      A.    I think we can address your question more

10 specifically by getting to the point of what I believe

11 you are asking.

12     Q.    I'll get to my point.   I'm asking you to answer

13 my question.   When you talk to somebody off the record

14 and tell them something, are you telling the truth or are

15 you lying to them?

16     A.    At any time, in any situation, in any

17 circumstance in my entire life?

18     Q.    Let me put it is to you this way:   When you talk

19 to a government agency, the State of Delaware, would you

20 lie to them?

21     A.    At any time, under any condition, under any

22 circumstance?

23     Q.    Yes.

24     A.    I might.



 1     Q.    When you wrote, when you addressed the letter to

 2   Melinda Sheldon, were you speaking informally or

 3   formally?

 4     A.    I don't know.   That was simply a person I was

 5   told to address the letter to.

 6     Q.    Were you telling the truth in that letter?

 7     A.    I don't know.

 8     Q.    You might have lied in the letter to the

 9   Department of Labor?

10     A.    I don't know.   This was --

11     Q.    When you learned, when you were contacted by the

12   Department of Labor, and the Department of Labor told you

13   that Mr. Burris had filed a claim of discrimination

14   against your company, you told me originally you didn't

15   know him from Adam, correct?

16     A.    Right.

17     Q.    By the time you had responded in writing to the

18   Department of Labor, had you made inquiries about who he

19   was to find out what the whole story was?

20     A.    No.

21     Q.    So when you responded to the Department of Labor

22   you had no knowledge of who Stanford Burris was?

23     A.    That is correct.

24     Q.    Did you know whether he was black or white?



1    A.   No.

2    Q.   Did you know whether he was short or fat?

3    A.   No.

4    Q.   Did you know if he had any disabilities?

5    A.   No.

6              (Thompson Deposition Exhibit 1 was marked

7    for identification.)

8              THE WITNESS:   Is that the same thing?

9    BY MR. ABER:

10    Q.   Yes.   Give that to your lawyer.  Do you recognize

11   the document that's been marked Thompson 1?

12    A.   No, I do not.

13    Q.   This is the official findings of the Department

14   of Labor.   Now, let me explain some terminology to you.

15   In this you will see the terms the "Department of Labor,"

16   that's the Department of Labor who got the complaint.

17              You will see the term "charging party,"

18   that means Mr. Burris because he filed the charge.

19              You will also see the term "respondent,"

20   Richards Paving, Inc. is the respondent.

21              Do you understand that?

22    A.   Mm-hmm.

23    Q.   Let's go through the document.   The document says

24   that on May 9th Mr. Burris filed a charge of

# EXHIBIT 3

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
```

STANFORD L. BURRIS,             )
                                )
            Plaintiffs,         )
                                )    Civil Action
v.                              )    No. 04-1469 (SLR)
                                )
RICHARDS PAVING, INC.,          )
                                )
            Defendant.          )

     Deposition of DAVID MOLUSKI taken pursuant to
notice at the law offices of Aber, Goldlust, Baker &
Over, 702 King Street, Suite 600, Wilmington,
Delaware, beginning at 2:00 p.m. on Wednesday,
June 14, 2006, before Lucinda M. Reeder, Registered
Diplomate Reporter and Notary Public.


APPEARANCES:

        GARY ABER, ESQ.
        Aber, Goldlust, Baker & Over
          702 King Street, Suite 600
          Wilmington, Delaware 19801
          for the Plaintiff,

        MATTHEW P. DONELSON, ESQ.
        Elzufon Austin Reardon Tarlov & Mondell, P.A.
          300 Delaware Avenue
          Wilmington, Delaware  19899-1630
          for the Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - --
              WILCOX & FETZER, LTD.
    1330 King Street - Wilmington, Delaware  19801
                  (302) 655-0477
                  www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



David Moluski

29

1    A.    I never spoke with him over a CB.

2    Q.    That was not my question.  Listen to my

3    question.

4    A.    Okay.  I'm trying to.

5    Q.    Did you test him to see whether he could be

6    understood on a CB or cell phone at any time?

7    A.    I did not test him, no.

8    Q.    Did you ask him to speak to anybody on a CB or

9    a cell phone?

10    A.    Did I -- I don't remember if -- I don't believe

11    so, no.  I can't remember.  I know he ... I don't

12    really know on that one.

13    Q.    After -- since the time that Mr. Burris took

14    the driving test, up until today, have you or anybody

15    at your direction ever contacted his former employers?

16    A.    I have never done that.  I cannot speak for

17    anybody else.  Not at my direction nobody has.  I have

18    not asked anybody to.

19    Q.    Do you have knowledge of anybody who has done

20    that?

21    A.    No, I do not.

22    Q.    Now, when you discussed the reasons that

23    Mr. Burris was not hired, you discussed it with

24    Jeff -- what was his name?  Do you have a last name?

David Molaski

35

1    hired was that he flunked the road test?

2       A.    That is correct.  He did not pass his road

3    test.  That's why he was not --

4       Q.    Did you tell Mr. Thompson there was any other

5    reason that he was not hired?

6       A.    No.

7       Q.    It's your testimony today, to the best of your

8    recollection, Mr. Burris was never tested on either a

9    CB radio or cell phone as a part of his application

10   process?

11      A.    That is correct.  I never spoke to him on a

12   CB --

13      Q.    I didn't ask whether you spoke to him.

14      A.    I did not test.  I will say that.  I did not

15   test him on a CB radio or a cell phone.

16      Q.    Is there anybody else who would have conducted

17   that type of test?

18      A.    Not that I know of.

19      Q.    Is it possible Mr. Thompson might have called

20   him back for a second interview?

21      A.    No.  Jeff would not have called him back unless

22   I asked Jeff to do that.

23            MR. ABER:  All right.  I have no other

24   questions.  Thank you.

David Moluski

38

1    I don't know at the time that Mr. Burris called,

2    whether he called me on my cell phone or he called

3    into the office and I was at my desk or they got ahold

4    of me and I said, yeah, bring him in for a test.

5      Q.    Do you have any recollection of having any

6    difficulty understanding him if he called you on a

7    cell phone?

8              MR. DONELSON:  Objection.  He just says he

9    doesn't remember if he spoke to him.

10             MR. ABER:  If you want to object, object.

11   If I want the reason, I'll ask for it.  I don't want

12   speaking objections.

13             Would you read my question back, please?

14             (The reporter read as requested.)

15             THE WITNESS:  I don't remember talking to

16   him on a cell phone.

17   BY MR. ABER:

18     Q.    At any time when you met him and talked to him,

19   did you have any difficulty understanding him?

20     A.    You had to listen closely when he spoke.  I

21   don't know if you would consider that difficult.  But

22   you had to listen closely because his voice was very

23   soft.

24             MR. ABER:  I have no other questions.



# EXHIBIT 4



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**
**Legal Unit**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2828
TTY (215) 440-2610
FAX (215) 440-2848

Via Facsimile and Regular Mail
(302) 472-4920

October 25, 2006

Susan E. Richards, Paralegal
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899

> Re:   Burris v. Richards Paving, Inc.
>       Charge No.(s) 17C200300419
>       FOIA Nos.  A6-10-FOIA-0850

Dear Ms. Richards:

This letter is in response to your request under the Freedom of Information Act ("FOIA").

(X)   In your FOIA request, you requested the following:

A copy of the above-captioned case.

(X)   Your request is (X) denied in part; or ( )denied in whole.  Those records not released were withheld based on the FOIA subsections checked below.  An attachment to this letter identifies each exemption involved, how the exemption applies and identifies the records withheld under each exemption.  The applicable sections of the FOIA exempting disclosure are 5 U.S.C. Section 552(b):

( )(2)    (X) (5)   ( )(7A)
( )(3)    ( ) (6)   ( )(7C)
( )(4)              ( )(7D)

(X)   Enclosed are the documents. No fee is charged because the cost of collecting and processing the chargeable fee equals or exceeds the amount of the fee.  29 C.F.R. Section 1610.15(d).

Please contact Bettina Dunn, Paralegal Specialist at (215) 440-2667 for any additional information regarding your Freedom of Information Act ("FOIA") request.

You may appeal the denial or partial denial of your request by writing within thirty (30) days of receipt of this letter to Assistant Legal Counsel/FOIA Programs, Office of Legal Counsel, U.S. Equal Employment Opportunity Commission, 1801 L Street, N.W., Washington, D.C. 20507. You must include a copy of the Regional Attorney's determination with your appeal. Your appeal will be governed by 29 C.F.R. §1601.11.

Sincerely,

Jacqueline H. McNair
Regional Attorney

Page 2

Burris v. Richards Paving, Inc.
Charge No.(s) 17C200300419
FOIA Nos. A6-10-FOIA-0850

## EXEMPTION 5

The fifth exemption to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (1982), permits withholding documents that reflect the analyses and recommendations of EEOC personnel generated for the purpose of advising the agency of possible action. This exemption protects the agency's deliberative process, and allows nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption covers internal communications that are deliberative in nature. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975); *Hinckley* v. *United States*, 140 F.3d 277 (D.C. Cir. 1998); *Mace v. EEOC*, 37 F.Supp.2d 1144 (E.D. Mo. 1999). The purpose of the deliberative process privilege is to "allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." *Missouri ex. rel. Shorr v. United States Corps of Eng'rs.*, 147 F. 3d 708, 710 (8ᵗʰ Cir. 1998).

Records may be withheld under this exemption if they were prepared prior to an agency's decision, *Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 775, 776 (D.C. Cir. 1988) (en banc) and for the purpose of assisting the agency decision maker. *First Eastern Corp. v. Mainwaring*, 21 F.3d 465,468 (D.C. Cir. 1994). 1065, 1068, 1069 (D. Colo. 1995). Records may also be withheld to the extent they reflect "selective facts" compiled by the agency to assist in the decision making process. *A. Michael's Piano, Inc. v. Federal Trade Commission*, 18 F.3d 138 (2d Cir. 1994). An agency may also withhold records to the extent that they contain factual information already obtained by a requester through prior disclosure. *See Mapother, Nevas, et al. v. Dept of Justice*, 3 F.3d 1533 (D.C. Cir. 1993).

## DOCUMENTS WITHHELD PURSUANT TO THE FIFTH EXEMPTION OF THE FOIA:

(1)     Internal Memorandum - 1 page - undated
(2)     Closure Report - 2 pages - 4/30/04

# CASE LOG

| CHARGE NO. | RESPONDENT | CHARGING PARTY |
|---|---|---|

| DATE | ACTION | ENTERED BY |
|---|---|---|
| 6/30/04 | DDOL ~~Unruce. Constitution~~ | |
| | ~~CHARGE DOCKETED~~ | |
| 8/6/04 | File forwarded by S&C Unit | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Charge package forwarded to CR/TIU | |
| | Charge package received in CR/TIU | |
| | Open charges against Respondent:     NONE     YES (see form) | |
| | 131/131A forwarded to Respondent | |
| | CP/CP Attorney letter forwarded | |
| | 212A forwarded to State/Local Agency | |
| | Forwarded to Enforcement Manager _____ | B4 |
| | Received by Enforcement Manager | B5 |
| | Forwarded to Enforcement Supervisor _____ | G1 |
| 8/19/04 | Assigned to Investigator SRC — for NRTS consuence | G2 |

082004 / Rec'/process/close

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Stanford L. Burris
88 Karlyn Drive
New Castle, DE 19720

From: U. S. Equal Employment Opportunity Commission
Philadelphia District Office
21 South 5th Street - Suite 400
Philadelphia, PA 19106-2515

[    ]    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 7C-2003-00419 (formerly 17CA300419) | Legal Unit | 215-440-2828 |

**NOTICE TO THE PERSON AGGRIEVED:**    *(See also the additional information attached to this form.)*

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ X ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below** to your case:

[    ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Marie M. Tomasso*

Marie M. Tomasso, District Director

*August 27, 2004*

*(Date Mailed)*

ing, Inc.

**MEMORANDUM**                                    **RECOMMENDATION FOR DISMISSAL/CLOSURE**

TO         : William D. Cook, Enf. Mgr.        CHARGE NO. 17C-2003-00419

FROM       : Stanford Lamb, Investigator       DATE: 082004        STAT: D

SUBJECT    : Burris                    v. Richards Paving

_Charging Party_                                      _Respondent_

1. I recommend dismissal/closure of the subject charge based on the following:

| | | |
|---|---|---|
| ☐ | a. No Jurisdiction | |
| ☐ | Lack of Standing | |
| ☐ | Other _____ | |

_Specify_

☐ b. Untimely

☐ c. Failure to Cooperate

☐ d. Unable to Locate

☐ e. Refusal to Accept Full Relief

☐ f. Not Cause

☐ g. Withdrawal
   ___ With Benefits   ___ Without Benefits

☐ h. Negotiated Settlement/Conciliation

☐ i. Other _____

_Specify_

☒ j. Right to Sue (Issued on Request)

   ☐ Under 180 days

**(Charging Party's Name and Address)**

Mr. Stanford L. Burris
88 Karlyn Drive
New Castle, DE 19720

**(CP's Attorney's Name and Address)**

**(Respondent's Name and Address)**

Mr. Jeffrey L. Thompson
Vice President Operations
Richards Paving, Inc.
9 Bellecor Drive
New Castle DE 19720

**(R's Attorney's Name and Address)**

2. Specific information in support of recommendation:

RECOMMENDATION APPROVED
(Signature of Unit Supervisor)          WDC          DATE 8/20/04

EEOC Form 291 (Test 4/95)    Closure Documents Mailed: 8/27/04          Same
                                                  Date              Signature

MAy, 26, 2004

Julie Cutter,

SuperVisoR

DEPT. OF LABOR

JUN 0 2 2004

INDUSTRIAL AFFAIRS
OFFICE OF LABOR
LAW ENFORCEMENT

RE BuRRis V Richards PAviNg Inc

CASE No. 0306187 1/17 CA 300419

DEAR MRS, MS Julie Cutter

PLEASE SeNd me A Letter of Right to Sue

ThANKS

Stanfrd L BuRRis



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

June 30, 2004

Mr. Stanford Burris
88 Karlyn Drive
New Castle, DE 19720

RE:    Burris v. Richards Paving, Inc.
       Case No.: 03061071/17CA300419

Dear Mr. Burris:

This is to advise you that the Office of Labor Law Enforcement of Delaware Department of Labor is administratively closing its file on the above-captioned Charge of Discrimination due to an unsuccessful conciliation and your request for a Letter of Right to Sue, which will be issued by the Equal Employment Opportunity Commission.  Pursuant to your request for a Letter of Right to Sue, the case will be forwarded to the Equal Employment Opportunity Commission (EEOC) for their review and possible investigation.

If you have any questions concerning this matter, please contact me at (302) 761-8200.

Sincerely,

Julie Cutler, Supervisor
Office of Labor Law Enforcement

JKC/nym



STATE OF DELAWARE
DEPARTMENT OF LABOR
## DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

April 30, 2004

Mr. Stanford Burris
88 Karlyn Drive
New Castle, DE 19720

Re:     Burris v. Richards Paving, Inc.
        Case No.: 03061071/17CA300419
        Notice of Reasonable Cause Finding

Dear Mr. Burris:

Enclosed is the Agency's determination in regard to the above-referenced matter. Based on the facts we were able to obtain from our investigation, we have found reasonable cause to believe that there has been a violation of Title 19, Delaware Code, Chapter 7, Subchapter III, as amended.

The next step in this Agency's administrative efforts to resolve this matter is to attempt conciliation. If conciliation fails for any reason, the Charging Party may elect to have a public hearing before Delaware's Equal Employment Review Board, or may elect a letter of Right to Sue from the Equal Employment Opportunity Commission and then proceed to Federal District Court.

☐     *To Charging Party only: Please find enclosed a request for information which will be required in order to attempt to secure an appropriate remedy. Please complete the enclosed request and return it within fifteen (15) days. If you should have any further questions or concerns, please contact Ms. Melinda Shelton who will be handling the conciliation in this matter.*

Sincerely,

*Julie Cutler / ☙*

Julie Cutler, Supervisor
Office of Labor Law Enforcement

JKC/lcf

Enclosures:    Notice of Reasonable Cause Finding
               Conciliation Questionnaire



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

April 30, 2004

Mr. Jeffrey L. Thompson
V.P. Operations
Richards Paving, Inc.
9 Bellecor Drive
New Castle, DE 19720

Re:    Burris v. Richards Paving, Inc.
       Case No.: 03061071/17CA300419
       Notice of Reasonable Cause Finding

Dear Mr. Thompson:

Enclosed is the Agency's determination in regard to the above-referenced matter. Based on the facts we were able to obtain from our investigation, we have found reasonable cause to believe that there has been a violation of Title 19, Delaware Code, Chapter 7, Subchapter III, as amended.

The next step in this Agency's administrative efforts to resolve this matter is to attempt conciliation. If conciliation fails for any reason, the Charging Party may elect to have a public hearing before Delaware's Equal Employment Review Board, or may elect a letter of Right to Sue from the Equal Employment Opportunity Commission and then proceed to Federal District Court.

☐    *To Charging Party only: Please find enclosed a request for information which will be required in order to attempt to secure an appropriate remedy. Please complete the enclosed request and return it within fifteen (15) days. If you should have any further questions or concerns, please contact Ms. Melinda Shelton who will be handling the conciliation in this matter.*

Sincerely,

*Julie Cutler / ᵐ*

Julie Cutler, Supervisor
Office of Labor Law Enforcement

JKC/nym

Enclosures:    Notice of Reasonable Cause Finding
               Conciliation Questionnaire



STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DELAWARE 19802

TELEPHONE (302) 761-8200
FAX (302) 761-6601

## NOTICE OF REASONABLE CAUSE FINDING

RE:  Burris v. Richards Paving Inc.                    State Case No.: 03061071

On May 9, 2003, Mr. Stanford Burris filed a Charge of Discrimination against Richards Paving, Inc. The Charge of Discrimination is hereby incorporated by reference.

Reasonable Cause Finding:

On April 30, 2004, the Department of Labor concluded its investigation and now finds, based on the following facts, that there is reasonable cause to believe that a violation of the State Discrimination Act has occurred.

I.    Undisputed Facts:
   1. Charging Party applied for a Truck Driver position with Respondent on or about 04/03/03.
   2. Respondent had an interview with Charging Party where the interviewer and Charging Party attempted to communicate using both a CB radio and a cell phone in an attempt to find a reasonable accommodation to Charging Party's disability.
   3. Respondent did not hire Charging Party for this position.

II.   Disputed Facts:
   1. Charging Party states that the representative of Respondent stated Charging Party was not being hired because of his voice.  Respondent further stated that Charging Party could not be heard over the CB radio and therefore could not be hired as a Truck Driver.
   2. Respondent claims that attempts were made at the interview to communicate with Charging Party over the CB radio and cell phone and were unsuccessful.
   3. Respondent states that there were no accommodations that could have been made for Charging Party and of those accommodations, which could have been a possibility, they would have caused Respondent an undue hardship.

III.  Resolution of Material Facts in Dispute:

   1. Charging Party has currently been employed by a trucking company for a period of 6 months where he used and communicated with a CB radio successfully.

2. Respondent was unable to demonstrate that there are no accommodations that could have been made.
3. Respondent failed to provide evidence that the reasonable accommodations that could have been utilized would have caused an undue hardship.
4. Respondent corroborated that in their business there is a limited amount of deliveries of their products that are delivered without complications and that these deliveries could be delivered by Charging Party.

IV.    Resolution:

1. Charging Party met his burden of showing that he was discriminated against based on his disability.

The Charge of Discrimination, State Case No. 03061071 will be administratively processed and assigned to a conciliation officer in an effort to administratively resolve the complaint pursuant to 19 *Del. C.* Section 712(c).

9/30/04
DATE

MELINDA SHELTON
INVESTIGATOR
LABOR LAW ENFORCEMENT OFFICER


4/30/04
DATE

JULIE CUTLER
LABOR LAW ENFORCEMENT SUPERVISOR

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

| | |
|---|---|
| ☐ FEPA | 06031071 |
| ☐ EEOC | 17CA300419 |

**Delaware Department of Labor** and EEOC

(State, or local Agency, if any)

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Stanford L. Burris | (302) 658-2706 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 88 Karlyn Dr.  New Castle DE 19720  NCC | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

| NAME | NO. OF EMPLOYEES OR MEMBERS 20+ | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| Richard Paving Inc. | | 302-328-5828 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 9 Bellecor Dr. New Castle, DE 19720 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE

☐ RETALIATION ☒ DISABILITY ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE |
|---|
| EARLIEST 4/3/2003 |
| LATEST 5/6/2003 |
| ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I applied for a truck driving position on or about 4/3/03 with the Respondent. I am an individual with a disability who is able to perform the essential functions of the position with reasonable accomodation. I went to see the Respondent on 5/5/03 to inquire whether the position was still available. I spoke to Dave McLaskley, Foreman and he gave me a road test. I passed the road test and then Mr. McLaskley asked for my driving record. I returned on 5/6/03, with a copy of my driving record but was told that he could not hire me because of my voice. Mr. McLaskley stated that I would not be able to be heard over the CB radio. I mentioned that I could use a cell phone to communicate and I could use my artificial larynnx(which I showed him) but Mr. McLaskley refused. Lastly, I asked Mr. McLaskley if I could be placed in a laborer position but he told me that couldn't be done because he needed truck drivers.

I believe that I have been discriminated against in violation of the Americans with Disabilities Act of 1991, as amended and the Delaware Handicapped Persons in Employment Act based on my disability because: I was not hired for a position for which I was qualified clearly based on my disability. Mr. McLaskley refused to provide me reasonable accomodation and therefore, refused me a position for which I could perform.

| | | |
|---|---|---|
| ☒ | I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT |
| | | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | | NOTARY - (When necessary to meet State and Local Requirements) |
| *Stanford L Burris* | | |
| Date 5-9-03     Charging Party (Signature) | | Subscribed and sworn to before me this date     (Day, month, and year) |

EEOC FORM 5
REV 6/92

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED