IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STANFORD L. BURRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-1469-SLR |
| | ) | |
| RICHARDS PAVING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Gary W. Aber, Esquire, Aber, Goldlust, Baker & Over, Wilmington, Delaware.  Counsel for Plaintiff.

Matthew P. Donelson, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware.  Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: November 9 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

On November 24, 2004, Stanford L. Burris ("plaintiff"),
proceeding in forma pauperis, filed suit against Richards Paving,
Inc. ("defendant"), alleging racial discrimination under Title
VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq..[1]
(D.I. 2)  This court entered a default judgment against defendant
on June 9, 2005 (D.I. 7); the default was vacated on July 6,
2005, per defendant's request (D.I. 15).  On August 5, 2005,
defendant filed a motion to dismiss "because the complaint and
supporting documents [did] not support a violation of Title VII
based on plaintiff's race or color."  (D.I. 17 at ¶ 5)
Subsequently, the parties submitted a stipulation allowing
plaintiff to amend his complaint and withdrawing defendant's
motion to dismiss.  (D.I. 19)  In his amended complaint, filed on
September 20, 2005, plaintiff now alleges discrimination under
the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§
12101 et seq..  (D.I. 19, ex. 1)  Presently before the court are
defendant's motion for summary judgment and its three motions in

---

[1]Plaintiff, in compliance with the law, filed suit within
ninety days of receiving a Notice of Right to Sue from the Equal
Employment Opportunity Commission.  (D.I. 2 at 4)

limine.[2]  (D.I. 34, 42, 43, 44)  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## II.  BACKGROUND

Plaintiff's larynx was surgically removed in 1991, leaving a hole in his neck and affecting his speaking voice.  (D.I. 39 at 5; D.I. 40 at B15-B16)  While plaintiff owns an electric voice box, he has not used it since 1991 or 1992.  (D.I. 40 at B15) Plaintiff contends that, although he does not personally consider himself disabled because of his voice, "a lot of employers" do. (Id. at B17)

In April 2003, plaintiff applied for a job with defendant as a truck driver.  (D.I. 35 at 2)  Plaintiff, who is currently about 64 years old, has had a Commercial Driver's License ("CDL") since the age of 21.  (D.I. 40 at B13)  Plaintiff's interview was conducted by an employee of defendant's named David Moluski ("Moluski"), who took plaintiff on a driving test in a Mack dump truck.[3]  (Id. at B18-B19)  Plaintiff claims that Moluski stated that plaintiff had passed the driving test and asked to see a

---

[2]Defendant's motions in limine seek to preclude the introduction of the Delaware Department of Labor's Notice of Reasonable Cause Finding (D.I. 42); the testimony of lay witnesses regarding plaintiff's lost wages claim (D.I. 43); and any claims, arguments, or evidence purporting to show that plaintiff is actually disabled (D.I. 44).

[3]While the parties disagree over whether plaintiff was asked to speak over a CB radio at some point during the interview (see, e.g., D.I. 40 at B32-B33, B35, B46), it is undisputed that such an event did not occur during the road test itself (id. at B20).

2

copy of plaintiff's driving record, which plaintiff provided the next day. (Id. at B20-B21)  Moluski denies telling plaintiff the results of the driving test and stated in his deposition that plaintiff "could not handle the truck."  (Id. at B39, B41) According to Moluski, he told plaintiff that he had to check with his supervisors before making a hiring decision (id. at B41); Moluski testified that he usually ends interviews with "bad driver[s]" in that manner in order to "alleviate[] any conflict with them" (id. at B41-B42).

Plaintiff avers that when he returned to defendant's office with a copy of his driving record, Moluski stated that he could not hire plaintiff "because of [plaintiff's] voice," which Moluski "didn't think . . . would be clear enough over the CB [radio]."  (Id. at B22, B24, B25)  Plaintiff claims that he then offered to "use [his] electric larynx or [his] cell phone to communicate.  And [Moluski] said no, that's not acceptable."[4] (Id. at B25-B26) Defendant denies this, stating that

> [i]t was not until plaintiff was informed that he would not be hired, that he began begging for a job and "volunteered" to take a radio test or to use his cell phone.  At no time prior to being informed that he was not being hired, did the issue of his voice even come up in conversation.

---

[4]The record indicates that plaintiff did not have his electric larynx with him at that time (D.I. 40 at B26), presumably because he had not used it for over a decade (id. at B15).

3

(D.I. 35 at 6)  Plaintiff's subsequent request to work for
defendant "as a laborer or [in] any capacity that [defendant] had
open" was denied.  (Id. at B26)  Plaintiff, who claims he was
"floored" by defendant's alleged refusal to hire him because of
his voice, then filed charges of discrimination with the Delaware
Department of Labor, which eventually culminated in the action at
bar.

## III.  STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the burden of proving that no
genuine issue of material fact exists.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct."  Horowitz v. Fed. Kemper
Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal
citations omitted).  If the moving party has demonstrated an
absence of material fact, the nonmoving party then "must come
forward with 'specific facts showing that there is a genuine

4

issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.
Civ. P. 56(e)). The court will "view the underlying facts and
all reasonable inferences therefrom in the light most favorable
to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir. 1995). The mere existence of some
evidence in support of the nonmoving party, however, will not be
sufficient for denial of a motion for summary judgment; there
must be enough evidence to enable a jury reasonably to find for
the nonmoving party on that issue. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party
fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving
party is entitled to judgment as a matter of law. See Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986). With respect to
summary judgment in discrimination cases, the court's role is "to
determine whether, upon reviewing all the facts and inferences to
be drawn therefrom in the light most favorable to the plaintiff,
there exists sufficient evidence to create a genuine issue of
material fact as to whether the employer intentionally
discriminated against the plaintiff." Revis v. Slocomb Indus.,
814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple
Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## IV.  DISCUSSION

In order to establish a claim under the ADA, a plaintiff must first establish that he or she "(1) has a 'disability' (2) is a 'qualified individual' and (3) has suffered an adverse employment decision because of that disability." Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998) (en banc) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)). If a plaintiff meets this initial burden, the court must then determine whether the plaintiff has put forth direct or circumstantial evidence of discrimination.  If the plaintiff has put forth direct evidence of discrimination, the court uses a "mixed motive" theory, meaning that "a plaintiff need only show that the unlawful motive was a 'substantial motivating factor' in the adverse employment action." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003) (citations omitted).  If, however, the plaintiff has put forth circumstantial evidence of discrimination, the court uses a pretext theory, which incorporates the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 68 (3d Cir. 1996) (stating that, in ADA cases, courts are to apply the Title VII burden-shifting rules).

Under the McDonnell Douglas burden-shifting analysis, once the plaintiff has established a prima facie case of

6

discrimination, the burden of production switches to the
defendant, who must "articulate some legitimate,
nondiscriminatory reason" for the adverse employment decision.
McDonnell Douglas, 411 U.S. at 802. If the defendant produces
sufficient reasons for its actions, the burden switches back to
the plaintiff to demonstrate that the defendant's reasons are
merely a pretext for discrimination. Fuentes v. Perskie, 32 F.3d
759, 763 (3d Cir. 1994). To defeat a motion for summary judgment
under this framework, plaintiff must point to some evidence from
which the "factfinder could reasonably either (1) disbelieve the
employer's articulated legitimate reasons; or (2) believe that an
invidious discriminatory reason was more likely than not a
motivating or determinative cause of the employer's action." Id.
at 764.

The ADA defines "the term 'disability' . . ., with respect
to an individual," as:

(A) a physical or mental impairment that substantially
limits one or more of the major life activities of such
individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff claims that he is disabled under
the ADA because he has a physical impairment, id. § 12102(2)(A),
or, in the alternative, is regarded by employers as having a

7

physical impairment, id. § 12102(2)(C). (D.I. 39 at 13, 18) The court will consider each of these arguments in turn.

## A.  Physical Impairment

In pertinent part, the Code of Federal Regulations defines "physical or mental impairment" as:

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (**including speech organs**), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine . . . .

29 C.F.R. § 1630.2(h)(1) (emphasis added). A physical impairment "substantially limits" a "major life activity" (which includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," id. § 1630.2(i)), if it renders someone:

(i) [u]nable to perform a major life activity that the average person in the general population can perform; or

(ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. § 1630.2(j)(1). Because plaintiff has suffered the loss of his larynx, a speech organ, the operative question becomes whether this physical impairment "substantially limits," within the meaning of the ADA, plaintiff's ability to engage in the major life activity of speaking.

8

The Code of Federal Regulations dictates that several
factors "should be considered in determining whether an
individual is substantially limited in a major life activity,"
namely:  "(i) [t]he nature and severity of the impairment; (ii)
[t]he duration or expected duration of the impairment; and (iii)
[t]he permanent or long term impact, or the expected permanent or
long term impact of or resulting from the impairment."  Id. §
1630.2(j)(2).  The removal of plaintiff's larynx is, without
question, a permanent impairment that will persist for the
duration of plaintiff's lifetime.  The severity of plaintiff's
impairment, however, appears to be limited to a diminution in the
volume of his speaking voice and difficulty pronouncing certain
words (though not to such an extent that plaintiff feels the need
to use an electronic larynx).  Despite his soft voice, plaintiff
is able to communicate over a cellular phone (and, by his own
admission, does so frequently).[5]  (D.I. 40 at B29)  Upon
reviewing the evidence of record, the court finds that
plaintiff's condition neither renders him unable to speak nor
significantly restricts the "condition, manner or duration" of
his speech when compared with the speaking abilities of an

_____

[5]Plaintiff's testimony about his speaking abilities belies
his answering brief's contention that he can only "minimally
communicate through the hole in his throat."  (D.I. 39 at 15)

9

average person in the general population.[6]  29 C.F.R. §
1630.2(j)(1).  The record reveals no evidence that plaintiff's
quiet speaking voice "substantially limits" his ability to
perform the major life activity of speaking.

Plaintiff cannot establish that he has an actual disability
under the ADA;[7] therefore, he has failed to meet his initial
burden of proof as to that count and the court need not engage in
any further analysis.  Because plaintiff has failed to make a
sufficient showing on an essential element of his case with
respect to which he has the burden of proof, defendant is
entitled to judgment as a matter of law, see Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986), and its motion for summary
judgment (D.I. 34) is granted with respect to plaintiff's claim
of actual disability.  As a result, in order to prove that he is
disabled under the meaning of the ADA, plaintiff must show that

---

[6]The determination of whether an impairment qualifies as a
disability under the ADA is a fact-specific, case-by-case
inquiry.  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184,
185 (2002).  Although plaintiff cites several cases where speech
impairments were found to pass muster under the ADA, one was
reviewed under the lenient pleading standards of a motion to
dismiss, Gottesman v. J.H. Batten, Inc., 286 F. Supp. 2d 604
(M.D.N.C. 2003), while the plaintiff in the other case had
significant ambulatory problems in addition to the difficulty the
judge had in discerning what the plaintiff said, Dudley v.
Hannaford Bros. Co., 190 F. Supp. 2d 69 (D. Me. 2002).

[7]Consequently, defendant's motion in limine to preclude
plaintiff from arguing that he is actually disabled (D.I. 44) is
granted.

10

defendant improperly regarded him as having such a physical
impairment.

**B.   "Regarded As" Impaired**

Plaintiff argues that, in the event the court should find
that he does not have an actual disability due to physical
impairment, he is disabled because defendant regarded him as
such.  (D.I. 39 at 18-20)  Under the ADA, a person is regarded as
impaired when he:

> (1) [h]as a physical or mental impairment that does not
> substantially limit major life activities but is
> treated by a covered entity as constituting such
> limitation;
>
> (2) [h]as a physical or mental impairment that
> substantially limits major life activities only as a
> result of the attitudes of others toward such
> impairment; or
>
> (3) [h]as none of the impairments defined in paragraph
> (h) (1) or (2) of this section but is treated by a
> covered entity as having a substantially limiting
> impairment.

29 C.F.R. § 1630.2(l).  While plaintiff has an impairment as
defined by 29 C.F.R. § 1630.2(h), this court has already
determined that such impairment does not substantially limit any
of plaintiff's major life activities; therefore, in order to make
a successful claim that he is "regarded as" disabled, plaintiff
must show that his impairment was "treated by [defendant] as
constituting such [a] limitation."  Id. § 1630.2(l)(1).

In support of his contention that defendant regarded his
impairment as substantially limiting, plaintiff relies on

11

"statements that [defendant's employees] made to the Delaware
Department of Labor [("DDOL")], that [plaintiff] could not
communicate with them adequately during the course of his
employment." (D.I. 39 at 18)  Aside from this single conclusory
document,[8] plaintiff has not submitted any of the evidence on
which such finding was based, including the purported statements
by defendant's employees that plaintiff was not hired because he
was unable to communicate with them.  Indeed, other than the
DDOL's Notice of Reasonable Cause Finding (which is
inadmissible[9]) and his own testimony (that he was required to
speak over a CB radio and not hired because of his voice),
plaintiff has produced no evidence showing that defendant or its
employees regarded him as substantially limited in the major life
activity of speaking.  Defendant, likewise, has proffered no
substantive evidence, aside from Moluski's deposition testimony,
that plaintiff's allegations are untrue.

---

[8]In its Reasonable Cause Finding, the DDOL stated, under the
heading "Undisputed Facts," that defendant "had an interview with
[plaintiff] where the interviewer and [plaintiff] attempted to
communicate using both a CB radio and a cell phone in an attempt
to find a reasonable accommodation to [plaintiff's] disability."
(D.I. 40 at B9)

[9]As a matter of practice, this court regards documents such
as the DDOL's Notice of Reasonable Cause Finding as inadmissible
hearsay.  Consequently, defendant's motion in limine to preclude
testimony and evidence relating to the DDOL's findings (D.I. 42)
is granted.

        In order to grant defendant's motion for summary judgment,

this court would have to weigh the credibility of plaintiff,

Moluski, and their conflicting testimony.  The United States

Court of Appeals for the Third Circuit has held that, "[w]hile

summary judgment may be based on affidavits, conflicts of

credibility should not be resolved on a hearing on the motion for

summary judgment unless the opponent's evidence is 'too

incredible to be believed by reasonable minds.'"  Losch v.

Borough of Parkesburg, Pa., 736 F.2d 903, 909 (3d Cir. 1984)

(quoting 6 J. Moore, Moore's Federal Practice ¶ 56.15(4), at 56-

524, 56-512.3 to 56-530 (2d ed. 1976)).  The record fails to

reveal the volume or quality of speech necessary to be a dump

truck driver.  Nevertheless, should plaintiff prove that he was

indeed asked to speak over a CB radio during his interview, a

reasonable jury might be able to infer that defendant failed to

hire plaintiff because Moluski regarded him as disabled.

        As recognized by the Third Circuit, "[I]t is the jury and

not the court who is the ultimate fact finder."  Id. at 909.  The

court concludes that plaintiff's testimony, if true, is not

incredible, and leaves the ultimate determination of plaintiff's

and Moluski's credibility to the jury; therefore, the portion of

                                13

defendant's motion for summary judgment challenging plaintiff's
"regarded as" claim of disability (D.I. 34) is denied.[10]

## V. CONCLUSION

For the reasons stated above, defendant's motion for summary
judgment is granted with regard to plaintiff's claim that he is
actually disabled and denied as it pertains to the count alleging
"regarded as" discrimination. Defendant's motions in limine are
granted in part (excluding the DDOL's findings and evidence that
plaintiff is actually disabled) and denied in part (with respect
to the use of lay testimony). An appropriate order shall issue.

---

[10]One of defendant's motions in limine contends that,
because plaintiff has not produced an expert report regarding his
alleged lost wages and the deadline for acquiring such expert
reports has passed, plaintiff should be precluded from seeking
lost wages damages at trial. (D.I. 43) Plaintiff responds:

> Based upon the information elicited from [Moluski], an
> adequate foundation would be established by which a
> jury could calculate the amount of lost wages and
> benefits that the plaintiff would have earned during
> his one year of unemployment, had the defendant not
> discriminated against him. Unlike the need to offer
> expert testimony as to the present value of future
> losses, the calculation of past lost wages, when there
> is an adequate factual foundation, requires only simple
> arithmetic.

(D.I. 48 at ¶ 6) The court is not convinced that an expert
witness is always necessary when addressing a claim for past lost
wages. While the court will deny defendant's motion in limine on
that issue (D.I. 43), it will require plaintiff to make a proffer
of the evidence and methods he intends to use to calculate such
lost wages before it is introduced at trial.