IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STANFORD L. BURRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-1469-SLR |
| | ) |
| RICHARDS PAVING, INC., | ) |
| | ) |
| Defendant. | ) |

Gary W. Aber, Esquire, Aber, Goldlust, Baker & Over, Wilmington, Delaware. Counsel for Plaintiff.

Matthew P. Donelson, Esquire, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: February 8, 2007
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On November 24, 2004, plaintiff Stanford L. Burris filed suit against defendant Richards Paving, Inc., ultimately amending his complaint to allege discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.. (D.I. 2; D.I. 19, ex. 1)  Defendant filed a motion for summary judgment on the grounds that plaintiff was neither "actually disabled" nor had been "regarded as disabled" under the meaning of the ADA.  (D.I. 34)  The court, finding that plaintiff was not "actually disabled," granted defendant's motion in part but allowed plaintiff's "regarded as" claim to proceed to trial. (D.I. 50)  Trial began on December 4, 2006, and ended the following day, when the jury returned a verdict in plaintiff's favor and awarded him damages in the amount of $120,480.  (D.I. 56)  On December 20, 2006, the court entered a judgment consistent with the jury's verdict.  (D.I. 68)

Presently before the court are the parties' post-trial motions.  Plaintiff has moved for the award of attorney's fees and expenses, as well as the imposition of a security bond. (D.I. 63, 64)  Defendant, meanwhile, has renewed its motion for judgment as a matter of law[1] (or, in the alternative,

---

[1] Defendant moved for judgment as a matter of law during trial; however, the court reserved judgment on the issue.  (D.I. 65 at ¶ 2)  Under Fed. R. Civ. P. 50, "[i]f the court does not grant a motion for judgment as a matter of law made [at trial], . . . . [t]he movant may renew its request for judgment as a matter

remittitur[2]) (D.I. 65), and moves that the court stay the execution of judgment pending the resolution of the outstanding motions (D.I. 74). The court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

## II. BACKGROUND

### A. Plaintiff's Post-Trial Motions

On December 14, 2006, having received a favorable jury verdict on his claim of "regarded as" discrimination under the ADA, plaintiff filed a motion "for an award of attorney's fees, litigation expenses, and costs" under 42 U.S.C. § 12205.[3] (D.I. 63 at 1) Plaintiff requests a total of $39,031.04, which encompasses $37,240 in attorney's fees, $1,596.04 in litigation expenses, and $195 in costs. (Id. at ¶ 14) Defendant objects to some of the services listed in plaintiff's counsel's itemized bill, and requests that the court subtract $3,710 (10.6 hours of work billed at $350 per hour) from the amount identified in

---

of law by filing a motion no later than 10 days after the entry of judgment . . . ." Fed. R. Civ. P. 50(b).

[2] "An order awarding a new trial, or a damages amount lower than that awarded by the jury, and requiring the plaintiff to choose between those alternatives." Black's Law Dictionary (8th ed. 2004).

[3] "In any action or administrative proceeding commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."

plaintiff's motion, which would result in a modified total of $35,321.04. (D.I. 69)

On December 14, 2006, plaintiff filed a motion for security bond, stating that, "[s]ince . . . defendant may seek post-trial relief, or may appeal this matter . . . , interest on this judgment will run for a period of . . . two years, which may result in interest of between $15,000 and $20,000." (D.I. 64 at ¶ 8) Fearful that, without a security bond, he "face[s] the very real potential of an inability to collect this judgment," plaintiff moves for the court to require defendant to post bond in the amount of $160,000. (Id. at ¶¶ 7-8) Defendant counters that plaintiff's motion is both premature and unnecessary. (D.I. 70)

## B. Defendant's Post-Trial Motions

Defendant filed its renewed motion for judgment as a matter of law (or, in the alternative, remittitur) (the "JMOL/remittitur motion") on December 15, 2006. (D.I. 65) According to defendant, plaintiff's testimony at trial negated "[t]he critical allegation in [his] complaint," to wit, the contention that "defendant perceived plaintiff as disabled because he could not be heard over the radio," thus leading defendant to refuse to hire him.[4] (Id. at ¶ 6) Consequently, defendant argues, "[i]n

---

[4] Defendant avers that, "[u]nder plaintiff's charge of discrimination, if there was no radio test given, then there is no evidence that plaintiff was perceived as being disabled

3

the present case, the evidence does not support any rational basis for the verdict," and defendant is entitled to judgment as a matter of law. (Id. at ¶ 5)

Should the court deny the renewed motion for judgment as a matter of law, defendant moves for remittitur under Fed. R. Civ. P. 59(e) and asks that the court cap plaintiff's compensatory damages at $50,000, the ADA's maximum penalty for a defendant which retains 100 or fewer employees, see 42 U.S.C. § 1981a(b)(3)(A). (D.I. 65 at ¶ 15)  Plaintiff agrees with defendant "that damages recoverable under the [ADA] are subject to a statutory cap," but denies that $50,000 is the proper cap in the case at bar. (D.I. 66 at 8)

"On January 16, 2007, plaintiff filed a notice of 30(b)(6) deposition in aid of execution [of the judgment (D.I. 73)]. According to plaintiff's notice, the deposition is scheduled for February 9, 2007." (D.I. 74 at ¶ 5)  In response, on January 18, 2007, defendant filed a motion to stay the execution of judgment pending the court's decision on the JMOL/remittitur motion. (Id.)  Defendant contends that such a stay is appropriate because "[t]he [c]ourt's decision on the pending post-trial motions will

---

because he could not be heard over the radio." (D.I. 65 at ¶ 11) "Even giving the plaintiff all reasonable inferences," defendant states, "there is no evidence or testimony that plaintiff was given any radio test during his interview. . . . Thus, it is impossible for a jury to return a verdict that plaintiff was perceived as disabled, if [plaintiff] cannot prove that [he] was ever given a radio test." (Id. at ¶ 13)

4

greatly affect the execution of the judgment," meaning that "defendant would have to expend additional time and money to oppose a motion to execute the judgment as well as attending a deposition that may be unnecessary." (Id. at ¶ 6) Likewise, defendant avers, "[p]laintiff is not prejudiced or substantially harmed by a stay pending the resolution of the post-trial motions since he also has post-trial motions that need to be resolved." (Id. at ¶ 8)

### III. STANDARD OF REVIEW

To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party must show that the evidence and the justifiable inferences therefrom do not afford any rational basis for the verdict. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 200 (3d Cir. 1996). In assessing the sufficiency of the evidence, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in favor of the nonmovant. See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 269-70 (3d Cir. 1995). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 190 (3d Cir. 1992)). "Although

5

judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability." Id. (citing Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993)). "'The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.'" Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 665 (3d Cir. 2002) (citation omitted).

## IV. DISCUSSION

### A. Defendant's JMOL/Remittitur Motion

#### 1. Judgment as a matter of law

Defendant contends that "plaintiff's trial testimony is clear that he was never asked to speak on the radio" during his visits to defendant's premises. (D.I. 65 at ¶ 7) Consequently, defendant claims, plaintiff failed to prove a "critical allegation" of his complaint and "it is impossible for a jury to return a verdict that plaintiff was perceived as disabled, if [plaintiff] cannot prove that [he] was ever given a radio test." (Id. at ¶¶ 6, 13) The court, however, agrees with plaintiff that "there was sufficient testimony for the jury to conclude that [plaintiff] was tested on a CB radio,"[5] and that "[w]hat the jury

---

[5] For instance, plaintiff testified at trial that, during his interview with defendant, "we went to another truck that was in the yard, and I did -- I didn't remember at [the] deposition, but

6

was confronted with, was a decision of the credibility of the witnesses," a determination the jury made in plaintiff's favor. (D.I. 66 at 5-6) "[V]iewing the evidence in the light most favorable to the [plaintiff] and giving [him] the advantage of every fair and reasonable inference," the court finds that "there is []sufficient evidence from which a jury reasonably could [have found] liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). Consequently, the court will deny defendant's renewed motion for judgment as a matter of law and shift its analysis to defendant's motion for remittitur.

---

after I started reading some of the record again, I remember we did -- I did talk over the CB." (D.I. 66, ex. 1 at 78) Similarly, plaintiff testified that one of defendant's employees "said . . . 'I really don't think that we could use you because of your voice, because I don't think we could hear you on the CB.'" (Id.) It is not for the court to decide whether this testimony is any more or less credible than the seemingly contradictory testimony cited by defendant.

7

2.  **Remittitur**[6]

Complaining parties under the ADA are statutorily entitled to the same "powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9" of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a). Successful claimants, therefore, are permitted to "recover compensatory and punitive damages as allowed in [§ 1981a(b)] in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964,[7] from the respondent." 42 U.S.C. § 1981a(a)(2). In discrimination actions brought under the ADA, the amount of compensatory damages a claimant may recover depends on the number of employees a respondent has. See 42 U.S.C. § 1981a(b)(3). Such caps do not apply to back pay. See id. § 1981a(b)(2).

"Back pay is available to a successful Title VII plaintiff under the Civil Rights Act of 1964." Spencer v. Wal-Mart Stores,

---

[6]The United States Court of Appeals for the Third Circuit has stated that "[t]he use of remittitur 'clearly falls within the discretion of the trial judge, whose decision cannot be disturbed by this court absent a manifest abuse of discretion.'" Evans v. Port Auth. Of N.Y. & N.J., 273 F.3d 346, 354 (3d Cir. 3001) (quoting Spence v. Bd. of Educ. of the Christina Sch. Dist., 806 F.2d 1198, 1200 (3d Cir. 1986)). This is so, the court concluded, because "'[t]he district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion.'" Id. (citing Spence, 806 F.2d at 1201).

[7]Section 706(g) of the Civil Rights Act discusses a complaining party's right to "[i]njunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; [and/or] limitations on judicial orders." 42 U.S.C. § 2000e-5(g).

8

Inc., 469 F.3d 311, 315 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-5(g)(1); Landgraf v. USI Film Prods., 511 U.S. 244, 252 (1994)). Therefore, because "[a] plaintiff alleging employment discrimination under the ADA has the same remedies as provided by the 1964 Act," id. at 315 n.3 (citing 42 U.S.C. § 12117(a)), back pay is also available to those bringing successful claims under the ADA. The proper method for measuring an award of back pay is "to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1119-20 (3d Cir. 1988). At trial, plaintiff requested $40,480 in back pay, an amount calculated by multiplying the average total weekly earnings for which plaintiff would have been eligible by the estimated number of weeks during which plaintiff would have been receiving a salary had defendant not refused to hire him ($632.50 per week for 64 weeks). (See D.I. 66, ex. 1 at 153-55, 157-58; id., ex. 4)

Federal law mandates that, "[i]f a complaining party seeks compensatory or punitive damages" in a case brought under certain anti-discrimination statutes (including the ADA), "(1) any party may demand a trial by jury; and (2) the court shall not inform the jury of the [statutory caps on damage awards] described in [§ 1981a(b)(3)]." 42 U.S.C. § 1981a(c). The jury, therefore, may

9

award whatever amount of damages it sees fit.  Then, "after a verdict is submitted, the trial court must ensure that any award complies with the relevant statutory maximums applicable," Parrish v. Sollecito, 280 F. Supp. 2d 145, 155 (S.D.N.Y. 2003) (citing Luciano v. The Olsten Corp., 110 F.3d 210, 221 (2d Cir. 1997)), reducing the award if necessary.  In the action at bar, defendant employs fewer than 101 people;[8] therefore, the court finds that defendant's statutory liability for compensatory damages is capped at $50,000.[9]  See id. § 1981a(b)(3)(A).

The jury in the case at bar ultimately awarded plaintiff a total of $120,480, without distinguishing between the specific amounts it intended to award for back pay or compensatory

---

[8]While plaintiff correctly stated, in his brief in opposition to the motion for remittitur, that there was no evidence of record that defendant employed fewer than 101 people (D.I. 66 at 8), defendant subsequently submitted an affidavit from its president, Richard Piendak, certifying that defendant "employs less than 100 employees . . . at any and all times during the year" (D.I. 67, ex. 1 at ¶ 3).

[9]Under the applicable statutory language,

> [t]he sum of the amount of compensatory damages awarded [under the ADA] for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
> . . . in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000 . . . .

42 U.S.C. § 1981a(b)(3)(A).

damages. (D.I. 56 at ¶ 4) According to defendant, the jury's award was "unsupported by the evidence and based solely on passion and sympathy for the plaintiff." (D.I. 65 at ¶ 18) Moreover, defendant argues, "since it is impossible for the [c]ourt to determine how much of the damage award was compensatory and how much was back pay, plaintiff's **total damage award** should be reduced to . . . the statutory maximum." (Id. at ¶ 19 (emphasis added))

The court disagrees with defendant's contention that it is impossible to determine how the jury intended the total award to be split between compensatory damages and back pay. Based upon the trial testimony of both plaintiff and David Moluski (one of defendant's employees), plaintiff requested an award of back pay in the amount of $40,480. (See D.I. 66 at § II.A) The jury awarded plaintiff a total of $120,480; common sense indicates that this total consisted of the requested $40,480 in back pay, plus $80,000 in compensatory damages. Consistent with the applicable statutory maximum, plaintiff's ability to recover compensatory damages is limited to $50,000.[10] The court, therefore, will grant defendant's motion for remittitur and reduce the judgment against defendant from $120,480 to $90,480.

---

[10]Defendant's assertions to the contrary notwithstanding, the court finds that the jury's award, while generous, was adequately supported by the evidence adduced at trial and, therefore, was not "based solely on passion and sympathy." (D.I. 65 at ¶ 18)

11

### B. Plaintiff's Motion for Attorney's Fees[11]

"As the prevailing party on an ADA claim, [plaintiff] is permitted to recover an award of attorney's fees." Lanni v. New Jersey, 259 F.3d 146, 148 (3d Cir. 2001) (citing 42 U.S.C. § 12205). The actual process to determine the appropriate statutory award of attorney's fees is well settled. "The most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (2004). The result of this calculation is called the lodestar, and it provides an objective basis on which to make an initial estimate of the value of a lawyer's services. See id. With respect to the number of hours expended, the prevailing party must establish that those hours were "reasonably expended." Id. at 434 (citing S. Rep. No. 94-1011, 6 (1976)). "Cases may be overstaffed, and the skill and experience of lawyers vary widely." Id. The prevailing party's counsel, therefore, should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. See id. Regarding a "reasonable hourly rate," a court references the prevailing market rates in the community to make this determination. See

---

[11]Section 12205 of the ADA allows the court to award "a reasonable attorney's fee, including litigation expenses, and costs" to the "prevailing party" in an ADA suit. 42 U.S.C. § 12205. The court finds that plaintiff was the prevailing party at trial in the case at bar.

12

Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984). The prevailing party bears the burden of establishing, by way of satisfactory evidence and the attorney's own affidavits, that the requested hourly rate aligns with this standard. See id.

Calculation of the lodestar does not end the inquiry. The court may adjust the fee upward or downward. First, the court may exclude from the lodestar calculation hours spent by the prevailing party's counsel on claims that were unrelated to the claim on which the prevailing party succeeded. See Hensley, 461 U.S. at 434. Second, the court may also exclude hours not commensurate with the degree of success obtained. See id. If a party has achieved only partial or limited success, the lodestar may be an excessive amount. See id. at 436. Finally, the party opposing the fee award may challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. See Bell v. United Princeton Properties, Inc., 884 F.2d 713, 715 (3d Cir. 1989). Based on the opposing party's evidence, the court may further adjust the fee.

In the case at bar, plaintiff has requested a lodestar of $37,240 (for 110.9 hours of work), as well as $1,596.04 in litigation expenses, and $195 in costs, for a total of $39,031.04. (D.I. 63 at ¶ 14) Defendant appears to challenge neither the actual grant of attorney's fees nor the proposed

13

billing rate of $350 per hour;[12] instead, it asks the court to subtract $3,710 (the equivalent of 10.6 hours of work), as well as "any additional attorney's fees the [c]ourt deems unreasonable and excessive," from plaintiff's total.  (D.I. 69 at ¶¶ 4-5) Specifically, defendant challenges three entries on Mr. Aber's itemized bill:  1) 2 hours of "Research" done on February 18, 2005; 2) 3 hours of "Research" done on February 19, 2005; and 3) 5.6 hours billed on November 8, 2006 for "Prepar[ing] Responses to [Defendant's] Motions in Limine."  (D.I. 63, ex. 6 at 1, 3) Defendant contends that the label "research" is insufficient in that "there is no description of the work performed, nor any proper documentation to justify five . . . hours of research at a cost of $1,750."  (D.I. 69 at ¶ 2)  Moreover, defendant points out, responses to motions in limine were due on November 6, 2006 (see D.I. 23 at ¶ 7); plaintiff is requesting attorney's fees for responses prepared two days after that deadline.  Therefore, defendant argues, "since plaintiff's counsel was late in filing any response to defendants' motions in limine and spent unnecessary time in preparing the responses, plaintiff's [attorney's] fees should be reduced by $1,960."  (D.I. 69 at ¶ 3)

---

[12]Even if defendant had challenged the billing rate of plaintiff's counsel, Gary W. Aber, Esq., the court finds that the affidavits from local attorneys and the Philadelphia Community Legal Services fee schedule he has submitted are sufficient to establish that $350 per hour is a reasonable rate for an attorney with Mr. Aber's experience in employment discrimination cases. (See D.I. 63, exs. 1-5)

14

With regard to defendant's first argument, the court notes that only five of the fifty-two entries on plaintiff's itemized billing statement refer (either in whole or in part) to "research." (D.I. 63, ex. 6) At most, therefore, plaintiff's counsel has billed his client for 15.5 hours of research related to the case at bar. Plaintiff submits that the five hours of research currently being challenged by defendant were used to explore "the theories and nature of [his] potential claims . . ., in order to determine the validity of any claim that the plaintiff might assert." (D.I. 72 at ¶ 1) Plaintiff contends that, as a result of this early preparation, his counsel was only required to spend an additional 2.8 hours doing research when defendant filed its motion for summary judgment in August 2006. (Id.) The court agrees with plaintiff that a total of 7.8 hours is not an unreasonable expenditure of time for "general research for the merits of the case, and in responding to defendant's motion for summary judgment." (Id.) Consequently, defendant's challenge to the five hours of research conducted by plaintiff's counsel in February 2006 is unfounded.

Defendant's challenge to the 5.6 hours of work billed for preparing responses to motions in limine is likewise unpersuasive. While plaintiff's responses were indeed filed two days after the applicable deadline, the court ultimately decided defendant's motions in limine on their merits, granting two and

15

denying one. (D.I. 50) Defendant did not challenge the tardiness of plaintiff's responses at the time they were filed and cannot now credibly argue, long after the fact, that plaintiff's counsel "spent unnecessary time in preparing the responses." (D.I. 69 at ¶ 3) The court, therefore, will grant plaintiff's motion for attorney's fees, litigation expenses, and costs (D.I. 63) in the requested amount of $39,031.04.

### C. Defendant's Motion for Stay of Execution and Plaintiff's Motion for Security Bond

Because the order accompanying this memorandum opinion disposes of all of the pending post-trial motions in the case at bar, defendant's motion for a stay of execution of judgment (D.I. 74) is denied as moot.[13] In light of this fact, the court will also deny as moot plaintiff's motion for security bond (D.I. 64), as the motion was premised on the possibility that this court might order a such a stay of execution.

---

[13]Should defendant subsequently decide to appeal the final judgment, it may,

> by giving a supersedeas bond[,] . . . obtain a stay subject to the exceptions contained in [Fed. R. Civ. P. 62(a)]. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Fed. R. Civ. P. 62(d).

## V. CONCLUSION

For the reasons stated above, defendant's renewed motion for judgment as a matter of law (or, in the alternative, remittitur) is granted in part and denied in part. Plaintiff's motion for attorney's fees is granted. Defendant's motion to stay execution of judgment pending the outcome of the parties' post-trial motions is denied as moot. Plaintiff's motion for security bond is denied as moot. An appropriate order shall issue.